[Civil No. 3924.  Filed March 28, 1938.]

[77 Pac. (2d) 814.]

In the Matter of the Estate of GEORGE A. HANNER-
KAM, Deceased.  J. S. WHEELER, Administra-
tor De Bonis Non of Said Estate, Appellant, v.
ANNA HANNERKAM, Former Administratrix
of Said Estate, Appellee.

Mr. Lemuel P. Mathews, for Appellant.

Mr. V. L. Hash, for Appellee.

McALISTER, C. J.—On December 13, 1933, George A. Hannerkam entered the storeroom of the Nielsen Radio and Sporting Goods Company in Phoenix, Arizona, to purchase some merchandise and while there was seriously injured through the careless act of one of its employees. He was immediately taken to St. Joseph's Hospital where he remained much of the time until his death from his injuries on June 10, 1934. On January 13th following the accident he filed an action against the Nielsen Radio and Sporting Goods Company, hereinafter referred to as the company, Earl A. Nielsen and Bennie Riggins, in which he sought to recover for his injuries damages in the sum of $23,000, the items thereof being these: $20,000 for the injury, $1,000 for hospital and $2,000 for medical expenses. This action, No. 40125, was pending at the time of his death.

On June 11, 1934, a petition for letters of administration of his estate was filed by his wife, Anna Hannerkam, and on June 22d letters of administration were issued to her upon the approval of her bond in the sum of $5,000. Following this and on the same day, June 22, 1934, the actions enumerated below were taken:

(1) The administratrix was substituted as plaintiff in cause No. 40125.

(2) She filed an amended complaint in that case in which she alleged two causes of action. The first was merely a reiteration of the allegations of the original complaint filed by the deceased in his lifetime and asked for the same relief. The second sought to recover $25,000 for the benefit of the estate of the deceased. It was filed under the provisions of chapter 18, Revised Code of 1928, for wrongful death, and contained the allegations necessary to an action of that character.

(3) A petition in probate case No. 10179, praying for authority to settle and adjust for $5,000 all her claims and causes of action against the defendants, $250 to pay for the injuries and damages suffered by the deceased in his lifetime and set up in the first cause of action, and $4,750 to take care of the damages to the estate caused by wrongful death and pleaded in the second cause of action was approved by the court.

(4) Cause No. 40125 was heard by the court, both sides waiving a jury, and upon the evidence of the administratrix alone, the defendant offering no testimony, the court rendered judgment for the plaintiff on both causes of action, the first in the sum of $250, and the second $4,750.

(5) The judgment was paid and satisfaction thereof entered.

Nothing further was done in the matter of the estate until May 31, 1935. On that date one M. Hubbard, to whom the claims for medical and hospital bills in-

curred by the deceased during his last illness had been assigned, filed a petition setting forth the foregoing proceedings in detail, objecting to the form of settlement and compromise, and alleging, in addition, among other things, that the administratrix had left the state of Arizona upon receiving the $5,000 and had failed to make any accounting thereof in compliance with the law governing the administration of estates, or to do anything whatever in the matter, and that the $5,000 should, so far as necessary, be applied to the payment of his claims. The prayer of his petition was that the court rescind the order of June 22, 1934, permitting the compromise and settlement in cause No. 40125, or direct that the $5,000 collected from the defendants be deemed subject to the debts of the estate, and that the letters of administration issued to Anna Hannerkam be revoked and a new administrator appointed. On August 10, 1936, she was removed as administratrix and J. S. Wheeler appointed administrator *de bonis non* on October 22d thereafter.

A week later, or on October 28, 1936, Anna Hannerkam submitted her final account and report as administratrix and within a day or so thereafter the new administrator filed objections to it. Up to March 12, 1937, however, no action had been taken on this account or on the petition to rescind, so on that day the administrator *de bonis non* filed a petition setting up substantially the same facts M. Hubbard had alleged in his petition of May 31, 1935, and for the same and some additional reasons asked the court specifically to rescind and set aside the order authorizing settlement. He alleged that the complaint in cause No. 40125 filed by Hannerkam in his lifetime for $23,000 set up two causes of action, one for $20,000 for pain and suffering, and the other for $3,000 for doctors and hospital bills; that to these still another, namely, an action for $25,000 for wrongful death, was added

by the administratrix in the amended complaint filed by her as substituted plaintiff on June 22, 1934, the other two causes being retained as alleged; that that complaint could not be amended by setting up a cause of action that did not come into existence until Hannerkam's death on June 10, 1934, some five months after he had filed the original complaint; that when the court, upon authorizing the settlement of cause No. 40125 for $5,000, directed the administratrix to apply $4,750 of this sum in satisfaction of the cause of action for wrongful death and $250 of it in payment of the other two causes, it did not, because of fraudulent representations made to it, know that the claims incurred during his last illness for medical treatment and hospitalization, amounting to some $1,500 or $2,000, had not been paid; that if the court had then been apprised of this it would probably have refused to authorize the settlement of the first cause of action for less than the amount necessary to pay these expenses.

The court allowed the claims for doctors and hospital expenses in the sum of $714.45, the amount asked for, but refused to set aside the order of June 22, 1934, approving the compromise and settlement of cause No. 40125, and this refusal is the action the administrator *de bonis non* has brought here for review.

The order authorizing the settlement of the cause of action in question was made pursuant to the provisions of section 4006, Revised Code of 1928, which permits the administrator or executor of an estate, with the approval of the court, to compromise a claim by or against the estate when it appears to be just and to the best interests of an estate to do so. In making that order in this case, as well as the one of March 12, 1937, refusing to rescind it, the court was exercising its probate jurisdiction, but the day it approved the compromise, June 22, 1934, the same court tried

cause No. 40125 in the exercise of its general jurisdiction and the record discloses that both parties were present, that a jury was waived by them, that the plaintiff introduced evidence in support of her complaint, and that, following submission of the case by the defendants without offering any testimony, judgment was rendered in her favor on both causes of action set up in her amended complaint. On the first she was awarded $250, and on the second $4,750, the judgment stating that these amounts constituted full, fair and just compensation for the matters set forth in the respective causes of action. Just why she saw fit to have cause No. 40125 tried and a judgment rendered, after she had been authorized to compromise it, does not appear, for she needed no further authority than this to settle that action. However, the court's jurisdiction to try it depended in no degree upon that order nor was in any way affected by it, and, this being true, it is not apparent how appellant's cause would be aided by a reversal of the order refusing to rescind. He would still be confronted with the judgment rendered in a proceeding in which the court had jurisdiction of both the parties and the subject matter. He probably filed his petition to rescind, rather than to set aside the judgment, upon the theory that granting it would automatically vacate the judgment, but we have just seen that this is not true.

■■ If the petitions to rescind had been treated as motions to set aside the judgment, the court would still have been without jurisdiction to grant the relief sought, because the judgment was rendered on June 22, 1934, and neither of the petitions to rescind was filed until long after the expiration of the six months' period in which a court may, under section 3859, Revised Code of 1928, for good cause shown, set aside its judgments, orders or decrees. This limitation does not, it is true, apply when the judgment has been ren-

dered without jurisdiction, and appellant contends that such is the situation here and assigns two reasons in support of this view. He claims first that no cause of action for wrongful death was pending before the court when it rendered judgment thereon, his reason for this contention being that the substituted plaintiff could not amend the complaint filed by Hannerkam in his lifetime for the pain and injuries he suffered, by adding to it a cause of action that did not exist prior to his death and the fruits of which were not applicable to the same purpose, that is, they were not, under sections 945 and 946, Revised Code of 1928, subject to the payment of the debts or liabilities of the deceased, but went wholly to the beneficiaries of his estate. It is true that initiating and trying the cause of action for wrongful death under such circumstances was irregular and perhaps erroneous, but it does not follow from this that the court had no jurisdiction to hear it. The facts set up in the amended complaint constitute a good cause of action for wrongful death and the only answer interposed to it by the defendants was a general denial. This gave the court jurisdiction of the parties and the subject matter, and its power to render the particular judgment it did, the action being one for wrongful death, cannot be questioned. The mere fact that it was presented to the court as an amendment to a complaint containing a cause or causes of action that may have died with the plaintiff who filed it did not, under the circumstances, deprive the court of jurisdiction to hear it. The only gain to the plaintiff in presenting to the court a cause of action for wrongful death by way of amendment, instead of by the institution of a new suit, was the saving of the expenses of starting a new action.

The other reason urged by plaintiff why the court was without jurisdiction is that the administratrix represented to the court that $250 would take care

454

of the doctor's and hospital bills, which had been alleged in the original, and reiterated in the amended complaint filed by her, to be from one thousand to two thousand dollars, that her representation in this respect was erroneous and fraudulent, and that the court, had it been apprised of the fact that these bills were unpaid when it rendered the judgment for $5,000, would in all probability have apportioned this sum between the causes of action in such a way that a sufficient amount to take care of these bills would have been rendered in satisfaction of the cause of action based thereon. This may be true, yet the giving of false testimony by a witness in the trial of a case does not affect the court's jurisdiction to hear it, or authorize the setting aside of a judgment on that ground after the expiration of six months from its rendition where it does not appear that the fraud was in any way instrumental in the court's assuming jurisdiction of the case. *Grand I. B. of Locomotive Engineers* v. *Mills,* 43 Ariz. 379, 31 Pac. (2d) 971. The giving of false testimony on a material matter, or the failure to disclose an important fact, which is the same thing, may justify the granting of a new trial or the reversal of a judgment, but it does not affect the court's power to hear the cause. One of the chief functions of a judge or jury is to weigh the testimony, and while a mistake in the appraisal of it by either may lead to an erroneous judgment and call for a reversal, it does not in any sense deprive the court of jurisdiction, which is the power to hear and determine, and includes necessarily the power to decide erroneously as well as correctly.

It is clear that the court was without jurisdiction to set aside the judgment, hence its order in refusing to do so is affirmed.

ROSS and LOCKWOOD, JJ., concur.