294 P.2d 670

Jack I. PODRET, Petitioner,

and

Jack H. Spiegel, Ruth Spiegel, Paul Nady and June Belson, Intervening Petitioners,

v.

The SUPERIOR COURT of the State of Arizona, in and for the COUNTY OF PIMA, and Robert S. Tullar, a Judge thereof, Respondents.

No. 6148.

Supreme Court of Arizona.

March 6, 1956.

William Gordon, Tucson, for Jack I. Podret.

Hymen D. Goldberg, Tucson, for Jack H. Spiegel and Ruth Spiegel.

Jack Ettinger, Tucson, for Paul Nady and June Belson petitioners.

Barber, Lesher & Dees, and Franklin E. Vaughan, Tucson, for respondents.

PHELPS, Justice.

This is an application for a writ of prohibition to prohibit the payment of attorneys' fees and other costs of appeal from the proceeds of the estate of Leona Spiegel pursuant to an order of the superior court of Pima County, dated September 8, 1955.

The decree of distribution of the estate was entered on September 24, 1951, which, among other things, purported to distribute to Podret as trustee the sums bequeathed to certain alien legatees under the provisions of the Spiegel will. Podret was at the time the duly appointed, qualified and acting executor of said estate. The decree of distribution provided that said sums were to be held by him in trust for the benefit of said legatees for a period of five years thereafter. And if within that

time any beneficiary of this trust should become eligible to receive the whole or any part of the money held in trust for such beneficiary, then the trustee should pay to such beneficiary the sum to which such beneficiary should become eligible to receive. And if within the said five-year period any beneficiary of the trust did not become eligible to receive the whole of the money held in trust for such beneficiary, then the moneys to which such beneficiary did not become entitled within five years should be distributed as though Leona Spiegel died intestate. Provided, however, that such distribution should be only to such persons who were entitled to participate and take under such intestate distribution by the laws of Arizona and the United States, and any other governing laws. It further provided that said trust may be modified at any time and that the trustee may seek instructions from the court as to all matters relating to the administration and termination of the trust and all disbursements incident thereto.

The court found in its decree of distribution that Paul Timar and Ilona Fisher were aliens resident in Hungary, and Charlotte Kun was an alien resident in Roumania and held that under the provisions of section 39–111, A.C.A.1939 [A.R.S. § 14–212], they were ineligible to receive property devised to them by the testatrix in the instant case who was a citizen of the United States. Section 39–111, supra, provides, insofar as material:

"* * * that aliens eligible to citizenship may take and hold any property, real or personal, in this state, by devise or descent from any alien or citizen, in the same manner in which citizens of the United States may take and hold real or personal property by devise or descent within the country of such alien."

On June 16, 1954, Franklin E. Vaughan and Bob Barber filed an unverified "petition of beneficiaries" in which they alleged that they were retained as attorneys by the consul general of Hungary and by the chief of consular section of the legation of Roumania; and that these diplomatic officials were respectively the duly constituted and appointed attorneys in fact for said alien legatees located in their respective countries authorized to act for them in the matter before the probate court. Distribution to these beneficiaries was thereby sought for the alleged reason that section 39–111, supra, did not prohibit distribution to them. They demanded that Podret, the trustee, be required to answer the matters and things set forth therein which was done. A subsequent court order of September 17, 1954, stated that taking of depositions of the alien legatees or of the consular officials should be a condition precedent to proceeding to trial in the probate matter. In this order the court stated it would authorize the placing of special funds at the disposal of the Hungarian and Roumanian heirs to enable them to

travel to this country and Tucson for the purpose of taking their depositions if it could be shown by satisfactory evidence that the only thing that keeps them from coming is the lack of funds.

On December 29, 1954, Vaughan and Barber filed a motion with the court stating that they were unable to obtain attendance of any of the legatees under the will or of the consular representatives of their respective countries who claimed to be acting as attorneys-in-fact of said legatees for the taking of depositions and moved the court to set aside the order of September 17, 1954; to hear the case on its merits or on an offer of proof, and to award costs and attorneys' fees for an appeal. The motion to set aside its order of September 17, 1954, was denied. The court, however, granted their motion "to make offer of proof" in support of the allegations of their petition to distribute to the alien devisees. An offer of proof was made on May 20, 1955. The evidence offered was rejected and the petition was dismissed.

On July 27, 1955, the court ordered the trustee to post a $250 cash bond on appeal by Vaughan and Barber from the order and judgment dismissing the petition. That appeal was filed July 11, 1955. On September 8, 1955, the court entered an order for attorneys' fees of $1,000 and costs of appeal to be paid to Vaughan and Barber, the order stating that should the trustee fail to post the appeal-bond money and pay the sums indicated by September 15, 1955, he would be deemed in contempt of court and a successor trustee would be appointed. On September 14, 1955, this court granted an alternative writ of prohibition commanding the superior court of Pima County to desist from any further proceedings to enforce the orders of that court for the payment of money to or for the benefit of Vaughan and Barber and from removing Jack I. Podret as executor or trustee.

The question before this court is: Did the probate court have jurisdiction to order Podret to pay to Barber and Vaughan costs and attorneys' fees out of the trust fund held by him in order to enable them to prosecute their appeal? It is the contention of counsel representing the interests of the legatees that Podret is a mere functionary of the trial court and as such has no authority to resist this order by applying for a writ of prohibition. They further contend that even if he is more than a mere functionary of the court and is a trustee, they as attorneys for the beneficiaries under the will are entitled to costs of appeal and to attorneys' fees for prosecuting such appeal to this court, and that such costs and attorneys' fees are entitled to be paid out of the trust fund.

This immediately raises the question of the jurisdiction of the Pima County Superior Court sitting in probate to appoint a trustee to receive and hold the funds here involved in trust for the benefit of the alien legatees, and, subject to the instructions of the court, distribute the same to

the person or persons thereafter found by the court to be entitled thereto either under the provisions of the will or under the law of descent and distribution. If it was without jurisdiction to create a trust under the circumstances and to appoint a trustee to hold and administer the same, Podret continues to hold said funds as executor and the rule laid down in In re Balke's Estate, 68 Ariz. 373, 206 P.2d 732, is controlling.

The administration of a decedent's estate is purely statutory and the procedure set forth in the statute must be strictly followed. Vargas v. Greer, 60 Ariz. 110, 131 P.2d .818. In that case an action was brought on the equity side of the superior court of Apache County to annul and vacate certain orders, judgments and proceedings theretofore had and taken in the superior court of Navajo County sitting in probate in the matter of the Estate of Lucy Elia Castillo, deceased, for the recovery from Greer as administrator of such estate, and his surety, moneys alleged to have been lost to the estate through maladministration and fraud.

The probate case had been filed and proceedings therein conducted in Apache County where decedent lived and died and where her estate was located. The case was then, upon stipulation, ordered transferred to Navajo County for hearing and trial on objections to the final account. The Navajo County Court proceeded to a determination of the issues involved in said hearing.

The plaintiff in the equitable action contended that the superior court of Navajo County sitting in probate was without jurisdiction in said matter and that the approval of the administrator's account by that court was procured through fraud and sought recovery of $30,000 alleged to have been lost through maladministration and through fraud. Greer, on the other hand, contended that the Navajo County Court had jurisdiction in the matter and denied any fraud in procuring approval of his account.

This court in passing upon the matter of jurisdiction quoted with approval the holding of the California court in Texas Co. v. Bank of America, etc., Ass'n, 5 Cal.2d 35, 53 P.2d 127, at page 130, the following:

" 'Probate proceedings being purely statutory, and therefore special in their nature, the superior court, although a court of general jurisdiction, is circumscribed in this class of proceedings by the provisions of the statute conferring such jurisdiction, and may not competently proceed in a manner essentially different from that provided. Smith v. Westerfield, 88 Cal. 374, 379, 26 P. 206.' * * *"

It further quoted with approval from said case the following:

" '* * * Its power (the superior court) when sitting in probate matters is derived from the statute, and it can-

not go beyond the provisions of the statute. * * *'"

This quotation was originally a pronouncement of the supreme court of Montana in State ex rel. Shields v. Second Judicial Dist. Court, 24 Mont. 1, 60 P. 489, 493.

We said in Shattuck v. Shattuck, 67 Ariz. 122, 192 P.2d 229, 233, that:

"This court has held that insofar as the Superior Court exercises jurisdiction in matters of estates of deceased persons it is a court of probate and its jurisdiction and functions in that respect are distinct from its jurisdiction and functions when sitting as a court of law and equity. * * *" (Citing cases from both Arizona and California.)

The latter case is also authority that our probate law is almost identical with that of California and was adopted from that state.

■ Neither section 39–111, supra, nor any other section in the Probate Code, insofar as we have been able to discover, vests the probate court with the power to create a trust to hold bequests to alien legatees or for any other purpose. Nor can such power be implied as necessary to carry out the powers expressly granted to it.

■ It follows that the order of the probate court purporting to establish the trust in the instant case and to appoint a trustee to administer such trust under the instructions of the court, was null and void and that Podret has at all times held the funds devised to the alien legatees as executor under the will of decedent and will continue to hold them in that capacity until such time as the court shall determine to whom they belong and shall order their distribution to such person or persons. Under the provisions of section 38–1517, A.C.A.1939 [A.R.S. § 14–710], the executor or administrator may not, unless removed for cause, be discharged until it is shown that he has paid all sums of money due from him and *delivered under order of the court all the property of the estate to the parties entitled thereto* and performed all acts required of him as such representative of the estate.

The decree of distribution did not purport to order the funds devised to the alien legatees delivered to them but expressly found they were not eligible to receive and hold said funds and ordered such delivery to them only upon the fulfillment of a condition precedent, to wit, that they satisfactorily show to the court that they have become eligible to receive and hold such funds under the provisions of section 39–111, supra.

■ It appearing that Podret has at all times been, and now is, the duly appointed, acting and qualified executor of such estate, the rule laid down in In re Balke's Estate, supra, is controlling.

The court therefore erred in ordering the executor to expend any funds of the es-

tate whatever, either for costs, attorneys' fees or for any other purpose in aid of the appeal by said alien legatees in prosecuting their appeal to this court.

The alternate writ of prohibition is made peremptory.

LA PRADE, C. J., and UDALL, WINDES and STRUCKMEYER, JJ., concur.