406 P.2d 873

In the Matter of the ESTATE of Willard J. MILLIMAN, Deceased.

FARMERS INSURANCE GROUP, Appellant,

v.

Neil J. WARD, Administrator de bonis non of the Estate of Willard J. Milliman, deceased, and Clarabelle Milliman, et al., Appellees.*

2 CA–CIV 79.

Court of Appeals of Arizona.

Oct. 20, 1965.

---

* This appeal was filed with the Arizona Supreme Court and assigned that court's No. 8142. The matter was referred to this court pursuant to A.R.S. § 12–120.23.

Chandler, Tullar, Udall & Richmond, by D. B. Udall, Tucson, for appellant.

Rees, Estes & Browning, by Donald Estes, Tucson, for appellees.

MOLLOY, Judge.

Willard J. Milliman was killed in an automobile accident on March 2, 1961. On May 2, 1961, Lucy Milliman filed a petition in probate court to be appointed administratrix of the estate of the deceased, stating she was the widow of Willard J. Milliman and the two children named in the petition were his children. Notice of the hearing on the petition was published as required by law and was sent to the per-

sons named in her petition as next of kin of the deceased, viz., herself, her two children, and the parents of the deceased. On May 15, 1961, letters of administration were issued her. Her bond was set in the sum of $1.00 and was posted.

On the same date the letters were issued, Lucy Milliman filed a petition to settle and compromise for $50,000.00 a wrongful death claim, arising out of the death of Willard J. Milliman, against Ralph W. Kennedy, doing business as Ralph's Truck Service, Floyd E. Tucker, and Allender & Lachemmyer. This petition was heard and acted upon by the court on the same day as it was filed.

In her petition she asked that she be authorized and directed to pay $33,333.33 of the money to herself, and $16,666.67 to herself as guardian of the persons and estates of the two minor children, and that upon receipt of $50,000.00 she be authorized to execute individually, and as administratrix of the estate of the deceased, a full and complete release to Ralph W. Kennedy, d/b/a Ralph's Truck Service, Floyd E. Tucker and Allender & Lachemmyer. No notice of any hearing upon this petition was given to any person. Appearing at the hearing was counsel for the Farmers Insurance, who had prepared the petition to compromise, but who made it clear to the court that he was not representing the petitioner, but rather the insurance company which proposed to pay the $50,000.00 in settlement. On May 15th, the probate judge signed the order authorizing a compromise of the claim for the sum of $50,000.00 and a distribution of said sum as petitioned. The bond of the administratrix was left at the sum of $1.00.

Following the court's approval of the settlement on May 15, 1961, the sum of $50,000.00 was paid by Farmers Insurance to Lucy Milliman. The amount going to the two children ($16,666.67) named in the petition was deposited in a court-controlled bank account. The amount of $33,333.33 was paid directly to the administratrix Lucy Milliman.

On July 27, 1961, Lucy Milliman petitioned in probate for final distribution of the estate, and for a discharge of herself as administratrix. Final decree of settlement and discharge of administratrix was signed by the court on August 24, 1961.

On April 25, 1962, Clarabelle Jean Milliman Childs filed petition in probate asking for revocation of letters of administration of Lucy Milliman, alleging that she, Clarabelle Milliman Childs, had married the deceased, Willard J. Milliman, on July 15, 1950, in South Dayton, New York, and that this marriage had not been terminated prior to his death. It alleged further that six children had been begotten to the deceased and Clarabelle Milliman by said marriage, and that she and her six children were lawful heirs of the deceased. This petition resulted in a hearing and an order of the court dated January 18, 1963, which found all issues in accordance with the petition, ordered that the letters of administration of Lucy Milliman and the discharge granted her be revoked, and issued letters of administration de bonis non to Neil J. Ward. No appeal has been taken from this order.

■ Neil J. Ward, as administrator de bonis non, on April 11, 1963, filed a petition to set aside the court's order of May 15, 1961, approving the settlement of the death claim. The Farmers Insurance was notified of this petition and appeared in opposition thereto. However, there was no notice given to any of the children of the deceased nor to the alleged tort-feasors, Ralph W. Kennedy, Floyd E. Tucker and the individuals designated as "Allender & Lachemmyer" in the petition to compromise. Farmers Insurance presumably appeared below and appears here on their behalf, though the record is not clear in this respect. In passing, it should be noted that a liability insurance company is not usually regarded as a real party in interest in actions to determine the liability of the

insured. 29A Am.Jur. Insurance § 1485; 46 C.J.S. Insurance § 1191.

At the hearing on May 22, 1963, the testimony of Lucy Milliman revealed that when she had filed the petition for probate and the petition to compromise the death claim she knew of Clarabelle and the six children in New York and knew that Clarabelle contended there had not been a termination of this prior marriage. The evidence did not establish, however, that she had informed Farmers Insurance of these facts. On appeal, appellees do not contend that Farmers Insurance knew of Lucy's fraud upon the court or participated therein.

Lucy's testimony at the hearing was to the effect that she had squandered the money she had received in the settlement by making trips to various race tracks and to Las Vegas, buying clothes for herself and making loans to relatives whom she could not locate.

The lower court entered an order on July 23, 1963, that the "acts" of Lucy as administratrix, including the order authorizing a compromise of the death claim " * * are void and of no further effect so far as they effect [sic] the interests * * * " of Clarabelle and her children. It is from this order of the lower court that the appellant Farmers Insurance has appealed.

The appellant urges before this court that the lower court erred in setting aside its prior order authorizing the settlement because by doing so, it permits, in effect, two wrongful death actions to be brought instead of the single one the insurance company contends the statute contemplates. The administrator de bonis non, on the other hand, maintains that the conduct of Lucy constituted such extrinsic fraud as would justify the setting aside of the court-approved settlement.

The undisputed facts of this case cry aloud for some remedy for the widow and six children of the deceased's 1950 marriage. These persons had no notice of the probate proceedings, other than that which they might have acquired from a publication in an Arizona newspaper while they were residents of New York. Likewise, they had no notice of the hearing upon the petition to settle the death claim, that hearing having been conducted ex parte. They are unprotected by any bond posted, and if the appellant prevails here, will be relegated to a suit against a person of admitted irresponsibility. However, this court is cognizant that harsh facts sometimes make even harsher law which can haunt the judicial halls for years to come.

A temptingly simple way to allow relief would be to accept the appellee's thesis to the effect that fraud invalidates a judicial proceeding. There are general statements in the law that fraud vitiates a judgment. 30A Am.Jur. Judgments § 18. Our Supreme Court has declared that only extrinsic fraud, as contrasted with intrinsic fraud, will invalidate a judgment. Dockery v. Central Arizona L. & P. Co., 45 Ariz. 434, 45 P.2d 656 (1935); Schuster v. Schuster, 51 Ariz. 1, 73 P.2d 1345 (1937); Honk v. Karlsson, 80 Ariz. 30, 292 P.2d 455 (1956). Extrinsic fraud has been defined as such fraud as that by which "* * the defrauded person has thereby been prevented from learning of the proceeding or asserting his claim therein *. * *." Honk v. Karlsson, 80 Ariz. 30, 33, 292 P.2d 455, 457.

■ It seems clear in this case that the fraud practiced by Lucy upon Clarabelle and the latter's six children was extrinsic fraud and thus of the nature entitling them to relief under the general rule. But because of the special nature of probate proceedings, there remains the question as to whether those victimized by this fraud are limited to an equitable action against the *defrauding* party to impress a constructive trust.

■ A probate is a proceeding in rem. A.R.S. § 14–301 et seq. As such, the decrees of the court, when entered within the ambit of its jurisdiction, are binding upon the

world as to the res which is the subject of the proceeding. 50 C.J.S. Judgments § 910c (3), pp. 553–554.

The person seeking to sustain the validity of this particular order is free of guilt of any fraud and is one relying upon a record which on its face is devoid of any flaw insofar as the giving of notice is concerned. The probate record discloses that the hearing of the petition for letters was published as required by A.R.S. § 14–412 and that notice was given to the heirs "named in the petition" as required by A.R.S. § 14–413.

In California, from whence most of our probate code derives (Shattuck v. Shattuck, 67 Ariz. 122, 192 P.2d 229 (1948)), the sole remedy of the person victimized by the type of fraud present in this case would be to bring an equitable action against the defrauding parties benefiting from the fraud. Nicholson v. Leatham, 28 Cal.App. 597, 153 P. 965 (D.C.A.2d 1915), hearing denied 28 Cal.App. 597, 155 P. 98 (Sup.Ct.Cal.1915); Security-First National Bank v. Superior Court, 1 Cal.2d 749, 37 P.2d 69 (Sup.Ct.Cal. 1934); Farmers & Merchants National Bank v. Superior Court, 25 Cal.2d 842, 155 P.2d 823 (Sup.Ct.Cal.1945).

These California cases hold that the requirement that the heirs be named in the petition for probate is not jurisdictional, and that if the clerk mailed notice to the heirs named in the petition, as required by statute, the jurisdiction of court is unimpaired, even though the name of an heir was fraudulently withheld, and the sole remedy of the person so defrauded is an equitable action against the defrauding party.

The wording of A.R.S. § 14–413, which requires that notice of hearing on petition for probate be mailed to the heirs "named in the petition," would suggest that this California rule is the law of this state.

A section of our probate code which has some pertinency is A.R.S. § 14–496 which reads:

"Acts of an executor or administrator before revocation of his letters testamentary or of administration are as valid as if the executor or administrator had continued in office."

The law denying the right to upset a judgment of a probate court which is regular on its face is related to the peculiar nature of the in rem characteristics of a probate proceeding. The requirement for notice in a probate proceeding has traditionally been considered a thing apart from the notice required in in personam action. The notice requirement for probate jurisdiction is summarized in 21 C.J.S. Courts § 306b:

"Proceedings in a probate court being, * * * in the nature of proceedings in rem, no notice to parties is necessary unless required by statute. Notice and opportunity to be heard is a matter of legislative favor and not essential to the jurisdiction of the court. Where the giving of notice is directed by statute, however, such notice calls the entire world before the court which thereby gains jurisdiction over the estate and over all persons for the purpose of determining their rights therein."

Stevens v. Torregano, 192 Cal.App.2d 105, 13 Cal.Rptr. 604, 611 (1961) states this rule as follows (at 611):

"In two respects, probate decrees are entitled, in a sense, to a greater finality than ordinary judgments in personam. First, they are and always have been, in rem, binding on all persons interested. * * * Second, constructive notice is sufficient, even though it may not in fact give actual or personal notice, in a particular case, to a particular heir, devisee, legatee or other interested person. This is because the proceeding is in rem, and also because the 'right' to take as heir or by will is really a privilege, completely within legislative control."

This well-established body of law, however, has felt the reverberations of the following statement of our Supreme Court:

> "That case [referring to Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865] said the due process requirements regarding notice do not depend upon a distinction between actions in rem and those in personam, however useful such a distinction may be for other purposes." Laz v. Southwestern Land Company, 97 Ariz. 69, 72, 397 P.2d 52, 54 (1964).

Thus, were it not for the fact that this court has come to the conclusion that the order entered by the probate court approving this particular settlement was not within its probate jurisdiction, this court would be faced with the task of determining to what extent this broad language of Laz v. Southwestern Land Company applies to a probate proceeding.

However, we believe fundamentals of our probate law mandate a result which skirts the due process question and which, fortunately, does equity in this particular case. We have already pointed out that a probate proceeding is one in rem. And, from the law examined above, it is very clear that *if* the notice given to Clarabelle and her children was sufficient to support the order of the court rendered below, it is only because of the peculiar nature of the action. In other words, if it is binding upon them at all, it is only as to the res within the court's jurisdiction.

> "A judgment or decree in rem is an adjudication pronounced on the status of some particular subject matter by a tribunal having competent authority for that purpose." 49 C.J.S. Judgments § 12.

In Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 1236, 2 L.Ed.2d 1283 (1958), it was held, inter alia, that a Florida probate court probating the estate of a Florida domiciliary had no in rem jurisdiction over a Delaware trust. A statement in that case is helpful in understanding the nature of in rem jurisdiction:

> "In rem jurisdiction. Founded on physical power, McDonald, v. Mabee, 243 U.S. 90, 91, 37 Sup.Ct. 343; 61 L. Ed. 608, the in rem jurisdiction of a state court is limited by the extent of its power and by the coordinate authority of sister States. The basis of the jurisdiction is the presence of the subject property within the territorial jurisdiction of the forum State."

Additionally, language in the classic case of Hook v. Hoffman, 16 Ariz. 540, 557, 147 P. 722, 729 (1915) is helpful:

> "While, properly speaking, *actions or proceedings in rem are against the thing itself,* and for the purpose of disposing thereof without reference to the title of particular claimants, the term has in a larger and broader sense been applied to certain actions and proceedings between parties, where the object is to reach and dispose of property owned by them or in which they have an interest; but, as these are not strictly in rem, they have frequently and more properly been termed quasi in rem, or in the nature of actions or proceedings in rem. 1 Corpus, Juris., § 171, In Rem and In Personam. See, also, Cyc. vol. 1, pp. 730, 731." (Emphasis added)

If, as seems to be very clear, a probate proceedings is one in rem, what is the thing over which the court has jurisdiction? We believe it to be no more than the "estate" of the deceased, and, as demonstrated by Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 may include less, depending upon one's definition of a decedent's "estate."

In the case before us, the order of May, 15, 1961, purports to dispose of a cause of action for the death of the deceased Willard J. Milliman. Was this cause of action a part of his estate so as

to be subject to the jurisdiction of the probate court? We think not.

In order to justify the conclusion reached, we must first show the inapplicability of the decisions of our Supreme Court, in Dockery v. Central Arizona L. & P. Co., 45·Ariz. 434, 45 P.2d 656 (1935), and Estate of Hannerkam, 51 Ariz. 447, 77 P.2d 814 (1938), both of which held that an order authorizing a settlement of a death claim was within the jurisdiction of the probate court and was made pursuant to the provisions of § 4006, Revised Code of 1928— the predecessor of A.R.S. § 14–474, subsec. B, which reads as follows:

"A compromise of a claim by or against the estate may be authorized when it appears just and for the best interest of the estate."

Both of these decisions were rendered in cases involving wrongful death claims under the wrongful death statute as it existed during the period 1902 through 1955. Arizona enacted its first wrongful death statute in 1887. §§ 2145 et seq., Revised Statutes of Arizona, 1887. It was very similar to the original Lord Campbell's Act. In Southern Pacific Co. v. Wilson, 10 Ariz. 162, 85 P. 401 (1906), the close relationship of the 1887 statute to the original Lord Campbell's Act was noted. Speaking of the 1887 statute the court said:

"The salient features of this act, therefore, are: 1. That it creates a new cause of action, and this action is for the death of the person injured; (2) that the action is for the exclusive benefit of certain designated members of the family of the deceased; (3) the damages recoverable are such as result to the beneficiaries from the death." 10 Ariz. 162, 165, 85 P. 402.

Statutes of this type create a new cause of action for the benefit of the beneficiaries named in the statute. 16 Am.Jur. Death § 61, p. 49; 25 C.J.S. Death § 15, p. 1077. Under such statutes, the recovery is not an asset of the estate of the deceased:

"Judgments recovered for negligently causing a person's death do not generally constitute assets of the estate of the deceased, but the proceeds of such a judgment constitute a specific fund, the distribution of which is limited to the persons indicated by the statute under which the recovery was had." 14 A.L.R. 516.

In 1901, our legislature amended the wrongful death act so as to substantially change its nature.[1]

"§ 2155. The jury may give such damages as they may think proportioned to the injury resulting from such death; and the amount so recovered shall be divided among the persons entitled to the benefit of the· action, or such of them as shall then be alive, in such shares as the jury shall find by their verdict."

For these provisions, in 1901 the following were substituted:

"2765. Every such action shall be brought by and in the name of the personal representative of such deceased person; and, *provided*, that the father, or in the case of his death or desertion of his family, the mother, may maintain the action for the death of a child, and the guardian for the death of his ward; and the amount recovered in every such action shall be distributed to the parties and in the proportions provided by law in relation

1. Key provisions of the 1887 Act were:
"§ 2149. The action shall be for the sole and exclusive benefit of the surviving husband, wife, children and parents of the person whose death shall have been so caused, and the amount recovered therein shall not be liable for the debts of the deceased."
"§ 2150. The action may be brought by all the parties entitled thereto, or by any one or more of them for the benefit of all."
"§ 2151. If the parties entitled to the benefit of the action shall fail to commence the same within six months after the death of the deceased, it shall be the duty of the executor or administrator of the deceased to commence and prosecute the action, unless requested by all of the parties entitled thereto not to prosecute the same."

In Southern Pacific Co. v. Wilson, 10 Ariz. 162, 85 P. 401 (1906), the court had before it the Wrongful Death Act as it was amended in 1901. The court held that the cause of action was no longer one for the benefit of certain designated beneficiaries, but one for the benefit of the estate:

"We think the statute of 1901 can only be construed as creating an action for the benefit of the estate, the damages recoverable to be distributed as assets of the estate, not subject, however, to debts." 10 Ariz. 162, 169, 85 P. 401, 403.

The substance of the 1901 Act remained in effect until 1956, and the Dockery and Hannerkam cases were both decided under that Act. These cases are, in effect, only two in a long line of cases holding that the wrongful death action is one pertaining to the estate of the deceased.

Dockery said:

"If any right of action on account of these deaths ever existed, they were *rights which inured to the benefit of the estates of the decedents* and not to any of the plaintiffs herein. Sections 944 and 945, Rev.Code 1928; De Amado v. Friedman, 11 Ariz. 56, 89 P. 588; Southern Pacific Co. v. Wilson, 10 Ariz. 162, 85 P. 401; Phoenix Ry. Co. v. Landis, 231 U.S. 578, 34 S.Ct. 179, 58 L.Ed. 377." (Emphasis added) 45 P.2d 656, 659.

"The complaint shows affirmatively that the superior court of Maricopa county had jurisdiction of the subject-matter of the order, to wit, the settlement of an alleged *claim of an estate of a decedent* against a party for negli-

gence resulting in the death of the decedent." (Emphasis added) 45 P.2d 656, 662.

In Hannerkam it was said:

"The order authorizing the settlement of the cause of action in question was made pursuant to the provisions of Section 4006, Revised Code of 1928, which permits the administrator or executor of an estate, with the approval of the court, to compromise a claim *by* or against *the estate* when it appears to be just and to the best interests of an estate to do so." (Emphasis added) 51 Ariz. 447, 451, 77 P.2d 814, 816.

It should also be noted that in Cochran v. Meacham, 63 Ariz. 34, 159 P.2d 302 (1945), there is dictum to the effect that a settlement order in a probate would be a bar to a subsequent action, if the executor or administrator had been regularly appointed. However, this case also arose under the old statute and the court specifically noted:

"A claim for death by wrongful act is not a personal effect of the deceased person. The action arises only upon the death of the deceased and *becomes an asset of the estate.*" (Emphasis added) 63 Ariz. 34, 37, 159 P.2d 302, 303.

It seems clear that under the present statute, as enacted in 1956, Arizona has again adopted the original concept of Lord Campbell's Act, viz., the claim is not an asset of the deceased's estate. A.R.S. § 12–612, subsec. A reads as follows:

"An action for wrongful death shall be brought by and in the name of the

to the distribution of personal estate left by persons dying intestate."

"2766. In every such case the jury shall give such damages as they shall deem fair and just, not exceeding five thousand dollars, and the amount so recovered shall not be subject to any debts or liabilities of the deceased: *Provided,* That every such action shall be commenced within one year

after the death of such deceased person. If the defendant in any such action die pending the suit, his executor or administrator may be made a party and the suit be prosecuted to judgment as though such defendant had continued alive. The judgment in such case, if rendered in favor of the plaintiff, shall be paid in due course of administration."

surviving husband or wife or personal representative of the deceased person *for and on behalf of the surviving husband or wife, children or parents,* or if none of these survive, on behalf of the decedent's estate." (Emphasis added)

The 1956 amendment also spelled out that the claim is not for damages to the estate but for damages to the survivors A.R.S. § 12–613 reads as follows:

"In an action for wrongful death, the jury shall give such *damages* as it deems fair and just with reference to the injury resulting from the death *to the surviving parties who may be entitled to recover,* and also having regard to the mitigating or aggravating circumstances attending the wrongful act, neglect or default. The amount recovered in such action shall not be subject to debts or liabilities of the deceased, unless the action is brought on behalf of the decedent's estate. As amended Laws 1956, Ch. 46, § 2." (Emphasis added)

This court holds that under the 1956 Act, a wrongful death claim of a surviving widow and children is not a claim "* * * by * * * the estate" within the purview of A.R.S. § 14–474.

There are many cases holding that a compromise of claim statute similar to A.R.S. § 14–474 does not pertain to a death claim for the benefit of designated beneficiaries. See, for example, Mann v. Minnesota Electric Light & Power Co., 43 F.2d 36 (10th Cir. 1930); American Car & Foundry Co. v. Anderson, 211 F. 301 (8th Cir. 1914); Washington v. Louisville & N. R. Co., 26 N.E. 653 (Ill.1891); Pittsburgh, C., C. & St. L. Ry. Co. v. Gipe, 160 Ind. 360, 65 N.E. 1034 (1903); Aho v. Republic Iron & Steel Co., 104 Minn. 322, 116 N.W. 590 (1908); Foot v. Great Northern R. Co., 81 Minn. 493, 84 N.W. 342 (1900). Also see Annot., 72 A.L.R.2d

285, 294, § 4 (1960); 103 A.L.R. 445, 448 (1936).

The question of whether there is jurisdiction to approve the settlement of a death claim in probate has arisen less frequently, but, when it has, the authorities appear to be uniform in holding that the probate court, in the absence of statute, and when dealing with a death claim which is not property of the estate, has no jurisdiction to authorize a settlement that is binding on heirs not parties to the proceeding. A case remarkably similar in facts to the present case is Ellenberg v. Arthur, 178 S.C. 490, 183 S.E. 306, 103 A.L.R. 437 (1936). There, as here, there was a contest between two "surviving widows" of the deceased. One of them, without the knowledge of the other, had negotiated a settlement which the probate court had approved. The South Carolina statute pertaining to claims, rather than referring to claims "by" the estate, referred to claims which "come into the hands" of the administrator. The South Carolina Supreme Court said:

"It is patent that the judge of probate had no power to authorize the settlement made between Ethel Huggins and the defendants. The order permitting and authorizing such settlement could not give vitality to a matter over which that court had no jurisdiction."

Likewise in Quevedo v. Union Pac. R. Co., 115 F.Supp. 25 (N.D.Ill.1953), it was held that an order of the probate court approving a settlement was not binding upon the court entertaining the death action, on the ground that the probate court had no jurisdiction over the subject matter of the wrongful death claim or its settlement, but merely jurisdiction of the distribution of the proceeds thereof.

The Supreme Court of California has noted the limitation on the probate court's jurisdiction to make a binding order approving the settlement of a death claim. In re Riccomi's Estate, 185 Cal. 458, 197

P. 97, 14 A.L.R. 509 (1921). This was a dispute in the probate court between the surviving beneficiaries as to the distribution of monies received in settlement of a death claim. The court stated that such a contest was not within the probate jurisdiction of the court:

"One word more with relation to the procedure adopted in this matter. The matter was apparently treated as a proceeding in probate, and is entitled 'In the Matter of the Estate of Egisto Riccomi, Deceased.' As we have seen, this money constituted no part of the estate of said deceased, and the proceeding is not one within the probate jurisdiction of the superior court. However, the proceeding was in substance one on behalf of an heir of the deceased against a trustee for an accounting and recovery of monies as to which a beneficial interest on the part of such heir is alleged. It was one as to the subject-matter of which the superior court had full jurisdiction, and by virtue of their appearance the court had jurisdiction also of the parties, with the result that its order or judgment is an effective adjudication as between the parties." 197 P. 97, 99.

■ In this state, it is clear that a probate court is a court of limited jurisdiction and if it purports to act outside its statutory jurisdiction, its decrees are null and void. Podret v. Superior Court, 80 Ariz. 182, 294 P.2d 670 (1956).

We do not take any position as to whether a probate court might adjudicate as to the rightful shares to which the surviving parties might be entitled in any settlement recovered by an administrator on a death claim, but we do hold that a probate court has no power to enter an order compromising a death claim when there are surviving beneficiaries named in the statute.

Parenthetically, it is apparent that the probate court did not consider this cause

of action to be an asset of the estate since it set bond in the sum of $1.00. A.R.S. § 14–452 provides that the bond of a personal representative " * * * *shall* be in an amount not less than the value of the *personal property* * * * of the estate * * *." (Emphasis added) If the death claim were an asset of the estate, we might very well find ourselves within the rule of Pacheco v. Delgardo, 46 Ariz. 401, 52 P.2d 479, 103 A.L.R. 494 (1935), wherein a settlement by a guardian ad litem for injuries to a minor was held to be without effect since the guardian ad litem had not given bond.

Being satisfied that the probate court had no jurisdiction to enter its order May 15, 1961, the court must determine the proper disposition to make of this appeal, which is from an order of July 23, 1963, holding the "acts" of the administratrix and the order of May 15, 1961, to be "void" insofar as the interests of Clarabelle and her children are concerned.

■ There is no challenge made in the appellant's brief to that portion of this order declaring the "acts" of the administratrix void, the three assignments of error being directed exclusively against the order voiding the settlement order. A judgment entered without jurisdiction is void. Rico Cons. Min. Co. v. Rico Exploration Co., 23 Ariz. 389, 204 P. 138 (1922). A court has the inherent power to purge its records of void judgment. Preston v. Denkins, 94 Ariz. 214, 382 P.2d 686 (1963).

The lower court limited the effect of its order of July 23, 1963, to " * * * so far as they [the "acts" and the order of May 15, 1961] effect [sic] the interests of Clarabelle and the six children * * *." This leaves room for the possibility that there was some efficacy to the order of May 15, 1961 as to Lucy and her children (who did appear before the probate court) under the doctrine enunciated in the quotation from In re Riccomi's Estate, 185 Cal. 458, 197 P. 97 (1921). Whether it has any

such efficacy is not before this court and we express no opinion thereon. Under the posture of this case presented on appeal, we hold the order entered below was in proper form.

We find it unnecessary because of the result reached to determine whether our death statute contemplates only one "action" for recovery. Under this decision nothing that occurred in the probate was an "action" to recover under the Wrongful Death Act.

■ One of the assignments of error was that the court set aside the judgment more than six months after the rendition thereof. Rule 60(c) Rules of Civil Procedure, 16 A.R.S., is cited. The limitation established by this rule, by its very terms, does not apply to void judgments.

The appellant also contends that the lower court erred in setting aside the settlement order because it did not order the return to the insurance company of all funds paid pursuant to the court's prior order. In the argument in the briefs, it is clear the appellant is pointing only toward the monies in the court-controlled bank account for the children of Lucy Milliman (one-third of the $50,000.00 received).

If this court is correct in its determination that the amounts recovered on a wrongful death claim are not assets of the estate and that an order of settlement by the probate court is beyond that court's jurisdiction, then it may follow that the probate court has no jurisdiction to order disposition of the amounts so recovered. This is the law in California:

> "Since recovery in a wrongful death action under the general statute is not an asset of the decedent's estate, its distribution among the beneficiaries of the action is not within the probate jurisdiction of the superior court. Nor should the distribution be made· in the course of the action, but it should be made in an appropriate separate proceeding." 55 Cal.Jur.2d Wrongful Death § 31, p. 428.

■ But even if our law should be otherwise,[2] Farmers Insurance did not petition the lower court for the return of this money to it, and therefore is not in any position to complain of any failure in this regard. Smith v. Rabb, 95 Ariz. 49, 386 P.2d 649 (1963). Furthermore, neither Lucy nor her two children were given any notice of the petition to set aside the settlement order. Fundamentals of due process would prevent the court from entering an order binding upon such unnoticed parties. Laz v. Southwestern Land Company, 97 Ariz. 69, 397 P.2d 52 (1964).

The judgment rendered below is affirmed.

KRUCKER, C. J., and HATHAWAY, J., concur.

---

2. There appears to be no uniform rule in the various states. 16 Am.Jur. Death § 258, at p. 177; 25 C.J.S. Death § 37d, at p. 1127.

Three different treatments of this problem are illustrated by decisions within the last five years in Kansas, Montana and Oklahoma. Holmes v. Price, 186 Kan. 623, 352 P.2d 5 (1960) approves the distribution of the proceeds in the probate court. State ex rel. Carroll v. District Court, 139 Mont. 367, 364 P.2d 739 (1961) holds that the court handling the death action should make the allocation among the surviving heirs without a jury. And Adams v. Coleman, 386 P. 2d 1004 (Okl.1963) holds that the apportionment should be made in the trial of the case, by the jury, if one sat, but that if it is not adjudicated during the trial, then the recovery must be divided according to the laws of intestate succession. The adjudication in the Oklahoma case was the result of a plenary suit brought by the claiming heirs against the administrator.