[Civil No. 2285.   Filed September 24, 1925.]

[239 Pac. 297.]

# E. A. HUGHES, Appellant, v. THE RIGGS BANK, a Corporation, Appellee.

1. BANKS AND BANKING—FRAUDULENT REPRESENTATIONS OF OFFICER OF BANK WHILE ACTING FOR HIMSELF NOT IMPUTED TO BANK.— Fraudulent representations by officer of plaintiff bank in obtaining an accommodation note from defendant while he was, as stated to defendant, acting for himself, are not imputable to bank.

2. BANKS AND BANKING—CASHIER'S KNOWLEDGE OF WANT OF CONSIDERATION FOR NOTE HELD KNOWLEDGE OF PLAINTIFF BANK.—

---

1.  See 3 R. C. L. 45.

2.  Imputation of knowledge of bank officers to bank where officers are personally interested, see notes in 29 L. R. A. (N. S.) 558; 49 L. R. A. (N. S.) 764. See, also, 3 R. C. L. 476.

Where cashier of bank fraudulently obtained accommodation note from defendant, and in violation of agreement with defendant, and contrary to instructions of directors, obtained money on the note which he appropriated to himself, defendant could not be held on note, since cashier, though acting for himself, was bank's sole representative, making it chargeable with his knowledge that note was without consideration.

3. PRINCIPAL AND AGENT—CASHIER FRAUDULENTLY OBTAINING NOTE AND SUBMITTING IT WITHOUT AUTHORITY FOR A LOAN IS NOT AGENT OF OSTENSIBLE BORROWER.—Cashier of bank, who has obtained an accommodation note from defendant by fraudulent representations and submits it to directors, without authority, for a loan for defendant, is not implied agent to receive the money for ostensible borrower.

4. ESTOPPEL—RULE THAT WHERE ONE OF TWO INNOCENT PERSONS MUST SUFFER THE ONE WHOSE AGENT CAUSED THE LOSS SHOULD BEAR THE BURDEN APPLIED.—In action on a note fraudulently obtained from defendant by cashier of plaintiff bank, from whom he fraudulently obtained a loan on note, keeping the money, the defendant is not liable on the note, in view of rule that where one of two innocent parties must suffer the one whose agent is responsible for the loss should bear the burden.

See (1) 7 C. J., p. 562 (Anno.).  (2) 7 C. J., p. 533.  (3) 2 C. J., p. 658.  (4) 21 C. J., p. 1170.

APPEAL from a judgment of the Superior Court of the County of Cochise. Albert M. Sames, Judge. Judgment reversed and cause remanded.

Messrs. Baker & Whitney, for Appellant.

Messrs. Gibbs & Gibbs, and Mr. Lyman H. Hays, for Appellee.

LOCKWOOD, J.—This is a suit on a promissory note. The facts as found by the trial court were substantially as follows:

During the spring of 1920, E. A. Hughes was county assessor of Cochise county and resided in Tombstone. Some days prior to June 1st, one K. N.

4. See 10 R. C. L. 378.

Coplen, who had for long been a friend of Hughes, came to him and told him of the organization of the Riggs Bank, hereinafter called plaintiff, at Willcox; that he (Coplen) was going to be manager and cashier of the new bank; that Mr. William Riggs, its president, wanted him to take a certain amount of its capital stock; that he did not have the money to pay for the stock, and the bank did not want to accept his note because they did not want the paper of any of the officers of the bank among its assets. Coplen then asked Hughes if the latter would sign a note covering the amount of the stock, which he (Coplen) was to buy, stating the bank would never hold Hughes liable on the note. Hughes asked Coplen what Mr. Riggs thought about it, and Coplen replied that it was agreeable to Riggs, and the latter would accept Hughes' note on these conditions. June 1st, 1920, Coplen presented a note, made payable to the bank, which Hughes signed and gave to Coplen, and the latter gave Hughes his note for the same amount as the Hughes note, stating it was for extra security, and promised to have the bank stock put in escrow with the Hughes note. The principal of the note was $2,600, and it was payable six months after date.

On June 12th, 1920, Coplen, who was the vice-president and general manager of plaintiff, appeared before a meeting of the board of directors of the bank, and handed in Hughes' note, asking if the board would approve a loan of that kind. William Riggs asked what Hughes wanted with the money, to which Coplen replied that he did not know, but presumed it was for campaign purposes. The note was then approved by the directors. Coplen took the note from the board, made out a duplicate deposit slip for its amount to himself, on which was written the word "Hughes," and placed the amount of the note to his (Coplen's) credit with the bank on the same day.

The money was thereafter checked out by Coplen, and Hughes never received any part thereof.

Defendant had no knowledge that the situation was any different from what Coplen had told him until April 28th, 1921, when the bank for the first time notified him of the maturity of the note on June 1st, 1921, it having been extended at the request of Coplen without Hughes' knowledge when it first came due.

The bank after some correspondence with Hughes, brought suit on the note, and the latter answered, setting up failure of consideration therefor. The trial court found in favor of the plaintiff, and rendered judgment for the full amount of the note, with interest and attorneys' fees as provided therein, and from this judgment defendant appeals.

There are some nine assignments of error set up which raise, in effect, two questions of law. The first proposition set up by defendant is that the note was obtained from him by means of false and fraudulent representatons made by plaintiff's agent, and that plaintiff had imputed to it knowledge thereof. The second is that no consideration ever passed from the bank for the note.

So far as the first proposition is concerned, we do not think it can be sustained. While it is undoubtedly true that the note was obtained by means of false and fraudulent representations on the part of Coplen, yet, in the making of such representations, he was acting, according to his own statements made to defendant, for himself, and not as plaintiff's agent. Such being the case, plaintiff did not have imputed to it any knowledge of the false representations made by Coplen, and it is not contended that it had any actual knowledge thereof.

The second question is one of greater difficulty. The general rule of law is that whatever notice or knowledge reaches the agent while he is acting within the line and scope of his authority in connection with

the principal's business, and as to matters over which his authority extends, also reaches the principal. Mechem on Agency, paragraphs 719–721.

There is however, a well-recognized exception that the principal is not so chargeable with such notice of the agent when the latter is engaged in committing an independent fraudulent act and the act or knowledge to be imputed relates to this fraudulent transaction. *Brookhouse's Case,* 73 N. H. 368, 111 Am. St. Rep. 623, 6 Ann. Cas. 675, 2 L. R. A. (N. S.) 993, 62 Atl. 219.

However, the great weight and number of courts assert positively that there is a qualification to this exception, and that it does not apply when the officer of a corporation, though he may act for himself, is the sole representative of the corporation in the transaction in question. *Tatum* v. *Commercial Bank & Trust Co.,* 193 Ala. 120, L. R. A. 1916C, 767, 69 South. 508; *National Bank* v. *Whitney,* 40 Cal. App. 276, 180 Pac. 845; *First National Bank* v. *Burns,* 88 Ohio St. 434, 49 L. R. A. (N. S.) 764, 103 N. E. 93.

Was Coplen the sole representative of the bank in this transaction, so as to bring the case within the last qualification? We have stated that up to and including the time the note left defendant's possession the plaintiff was in no way involved. The transaction was merely one between defendant and Coplen, whereby the former agreed to execute an accommodation note for the latter, to be placed in the plaintiff bank with certain stock which was to be issued by the latter to Coplen, attached as collateral, and, had this been done, defendant would have been bound, notwithstanding no consideration passed to him. Paragraph 4174, R. S. A. 1913. Nor could he have successfully defended on the ground that Coplen had promised the bank would not hold him on the note. *State Bank of Moore* v. *Forsyth,* 41 Mont. 249, 28 L. R. A. (N. S.) 501, 108 Pac. 914, and cases cited.

Coplen, however, did not carry out his agreement, but on June 12th went before the board of directors and represented that defendant personally wanted the money for campaign purposes, and asked if the board would approve a loan of that kind to Mr. Hughes, and the approval was given.  Up to this point Coplen was clearly either acting as an individual, or else was within the exception to the general rule, and the bank had no notice, either express or implied, of any defect in the paper.

But had the transaction stopped here, the bank would have parted with no consideration, and no obligation would have rested on anyone to pay it.  To create an obligation on accommodation paper as well as any other kind, a consideration must pass to someone.  It was by the taking of the $2,600 from the funds of the bank, and not until then, that if any obligation ever existed on Hughes' part it accrued, and in that Coplen was the sole representative of the bank, and acting as such, and in no sense an agent of Hughes.  Only in his capacity as manager of the bank, and because he was such, did he have it in his power to make the transfer of funds.

If plaintiff relies on the action of the board to take the case out of the qualification to the exception, the answer is that Coplen did not do what the board told him, viz., make the loan to Hughes.  It cannot claim an instruction to its own officer, which was not followed, will protect it against what he actually did do.  If on the other hand it holds that, since the note was an accommodation one, Hughes needed not receive the money, the reply is that the board approved the loan only as a direct one to Hughes, and no representative of the bank but Coplen knew it was accommodation paper, and he knew all the conditions annexed to it.

But, it may be said, Coplen was Hughes' agent to receive the money.  He was, of course, not actually such, nor did the board have even Coplen's word that

29 Ariz.—4

he was, and to sustain a claim of implied agency there was only the fact that when the board was in session, Coplen, who was their cashier and manager, appeared with the note, without suggesting he was acting for Hughes, and asked if the loan would be approved. If such a situation justifies the assumption that a cashier of a bank is the agent of the ostensible borrower to receive the money, no client of a bank would be safe in dealing with any officer short of the board of directors, or in signing a note except when the cash was simultaneously passed over the counter.

We are of the opinion that the facts bring the case within the qualification of the exception to the rule above stated, and, as stated in *First National Bank* v. *Burns, supra:*

"The principal's liability does not depend upon the agent's duty to communicate, or the likelihood that he will communicate, his knowledge to the principal, but upon the fact that the agent is the *alter ego* of the principal, acting for the principal, and knows that his acts and knowledge *ipso facto* become the knowledge and acts of the principal."

We realize that any solution of this case must work hardship on an innocent party, but when one of two innocent persons must suffer, it is but just that the one whose agent is responsible for the act which fixes the loss should bear the burden.

The judgment is reversed and remanded to the superior court of Cochise county, with instructions to render judgment for the defendant.

McALISTER, C. J., and ROSS, J., concur.