14195

ELLENBERG v. ARTHUR *ET AL.*

(183 S. E., 306)

*Messrs. Henderson & Salley,* for appellants,

*Mr. William M. Smoak,* for respondent,

January 2, 1936.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

W. T. Arthur, one of the appellants, operated a line of automobiles as carrier of passengers for hire between Aiken, S. C., and Augusta, Ga. Clint Palmer was in the employ of Arthur as the driver of one of his automobiles. United States Fidelity & Guaranty Company became surety for W. T. Arthur in the sum of $5,000.00 in a policy or bond in pursuance of the Acts of the General Assembly in such case made and provided, which bond provided that it should be for the benefit of, and subject to suit thereon, by any person who shall sustain actionable injury or loss while a passenger on the automobile or bus covered by said policy, caused by the negligence of W. T. Arthur as common carrier, his servants or agents. May 23, 1933, Corbitt Huggins took passage on one of the automobiles or a bus of W. T. Arthur to be transported to his home at Bath, S. C., from Augusta, Ga. The motorcar in which he was riding collided with a truck, and Corbitt Huggins suffered injuries from which he died the same day. Ethel Huggins made petition to the probate Court to be appointed administratrix of his estate, stating that she was the wife of Corbitt Huggins and the children therein named were his children. After due publication of citation, letters of administration were issued to her by the Judge of the Probate Court for Aiken County of date June 26, 1933. She gave bond and entered upon the discharge of her duties as administratrix. Negotiations for the settlement of the claim for damages, action for the recovery of which was about to be begun, culminated in an agreement between this administratrix and the defendant to settle all claims for damages growing out of the death of Corbitt Hug-

gins for the sum of $1,500.00. June 26, 1933, this administratrix filed in the Probate Court for Aiken County a petition praying that she be authorized to settle all such claims for the sum named. The Probate Judge held a hearing on the petition, at which were present the petitioner and her attorney. No one was present representing the defendants Arthur and Palmer, but an adjustor was present representing the United States Fidelity & Guaranty Company. The hearing resulted in an order by the Probate Judge by which Ethel Huggins was "authorized and permitted to settle all claims of herself as administratrix, of herself as widow, and of the minor children of the said Corbitt Huggins, deceased, against W. T. Arthur and Clint Palmer, for damages to him or them on account of the death of the deceased, for the sum of Fifteen Hundred ($1,500.00) Dollars. * * * It is further ordered that said $1,500.00 paid to said administratrix in full settlement of all claims of every kind or character, by her and for the benefit of the heirs at law of the deceased shall be immediately distributed by her according to the laws of distribution of this State in such cases made and provided."

Upon the signing of this order, the adjustor for the insurance company gave the draft of the company in the sum of $1,500.00 payable to "the order of John D. Canady, Attorney, and Ethel Huggins, Admx. the Estate of Corbitt Huggins." This draft was duly paid. From it there was paid to John Canady, as his fee, the sum of $500.00, and to Ethel Huggins the sum of $331.60 as her share as widow. There was left in the hands of the Judge of Probate the sum of $649.20, the shares of the minors, awaiting the appointment of a guardian for them. It is still in his possession. On receiving the draft, Ethel Huggins, as administratrix and as an individual, gave to W. T. Arthur a written release from all claims arising from "the above mentioned damages, losses or injuries."

Thereafter, to wit, July 6, 1933, Emma Huggins came from Gibson, N. C., and filed a petition in the Probate Court

for Aiken County alleging that she was the lawful wife of Corbitt Huggins, and that she and her four children were his only lawful heirs, that Ethel Huggins had practiced a fraud on the Probate Court, and praying that the letters of administration given to Ethel Huggins be revoked and cancelled. The Probate Judge issued a rule requiring Ethel Huggins to show cause why the letters issued to her should not be revoked, the entire proceedings by her set aside, and some other person appointed administrator in her stead. Ethel Huggins duly made reply to the rule, setting out, among other things, that she was the common-law wife of Corbitt Huggins and the mother of three children by him. After the hearing, the Judge of Probate revoked the letters of administration granted to Ethel Huggins, and, at the request of Emma Huggins, appointed A. R. Ellenberg administrator of the estate of Corbitt Huggins. No new citation was published, nor did any other person apply for letters of administration.

This action was then brought seeking damages in the sum of $5,000.00 for the benefit of Emma Huggins and her children by Corbitt Huggins. It is an action under the provisions of our statutes embodying the principles of Lord Campbell's Act.

The defendants set up the settlement in the Probate Court as a bar to the action; that the plaintiff was without capacity to sue because his appointment as administrator was irregular and void because there had been no petition by him, nor any publication of a new citation, and the plaintiff was not related to the deceased, and the deceased left no assets in this State on which to administer. Answering further, that the collision was an accident due to very heavy rain and wind, and was not due to any negligence on the part of defendants.

The case came on for trial before Hon. Thomas M. Boulware, special Judge, and resulted in a verdict for plaintiff in the sum of $2,500.00.

Motion for directed verdict for defendants was made in due course and refused. This appeal followed, based on five

exceptions with numerous subdivisions. All of them shall have consideration, but may not be specifically stated.

The cardinal questions in the case are made by the issues arising under Exception 1 and its subdivisions and the exceptions relating to alleged errors in the admission of testimony. In considering these, it is necessary to consider the grounds of the motion for directed verdict and the rulings of the Court thereabout.

The motion for directed verdict was based on the grounds that the claims on which the action is brought were settled by a proceeding in the Probate Court, under an order of that Court, by Ethel Huggins, then the duly appointed administratrix of the estate, and by the release which she gave; that, although her letters of administration were subsequently revoked, her acts done in the regular course of the administration were legal and binding. The further ground of the motion was that the plaintiff "has no legal power to maintain this action" because, on the day the letters of administration issued to Ethel Huggins were revoked, the Judge of Probate appointed A. R. Ellenberg administrator without having published the two week's notice required by the statute.

In passing on the motion for directed verdict, the trial Judge held that the appointment of A. R. Ellenberg was legal. Further, in relation to the settlement in the Probate Court, he said: "But I do not think the Probate Court had authority, or if it did have authority did not take such procedure as would make its approval of the settlement binding or give it any validity."

He held that the parties had intended to settle the claims which the widow and children had, but had taken no thought of the difference between an action under the Survival Act (Code 1932, § 419) and one under Lord Campbell's Act. (Code 1932, §§ 411, 412.)

Appellant's counsel have argued earnestly that the Probate Court, being a Court of record and a Court of concurrent jurisdiction with the Court of Common Pleas of matters

of the nature of those involved here, had power to authorize this settlement, and they cite many authorities, principally from other jurisdictions, in support of their argument. We do not think they are controlling. It may be admitted that at common law executors and administrators had power to compromise and settle doubtful claims coming within the province of their duties in administering the assets of the estate. That question is regulated in this State by our statute found in the Code of 1932 as Section 8999, which is as follows: "All administrators and executors may, by and with the consent of the probate judge, compromise all demands coming into their hands as such, where the same are appraised doubtful or worthless; and where such compromises are made, the same shall be fully shown in their annual returns."

That section plainly applies to such claims as are to be listed on the statement for appraisal, such as notes, accounts, etc. These things come into the hands of the administrator or executor, and he must account for them. A claim under Lord Campbell's Act does not "come into the hands" of the administrator within the purview of this section. He is practically a figurehead in bringing the action as administrator. He brings it for the benefit of those who are the beneficiaries in interest under the statute. When he collects the claim, he does not turn it in with the other assets of the estate to the Probate Court. He makes no return thereof to the Probate Court. He pays over the proceds to the beneficiaries. If such administrator brings action under the survival statute and recovers, that which he recovers becomes assets of the estate in his hands, for which he must make return to the Probate Court. But such is not the action here.

In the case of *Bennett v. Ry., Gas & Electric Co.,* 97 S. C., 27, 30, 81 S. E., 189, discussing the matter of joinder of actions, Mr. Justice Hydrick said: "In this respect, these two causes of action fall short of the statutory requirement. While the party plaintiff is nominally the same as to each

cause of action, in reality his relation to and interest in each is entirely separate and distinct. In the one he is the representative of the estate of the deceased, and the recovery, if any, is for damages resulting from the injury to deceased, and the amount recovered will go into his hands as assets of the estate, liable for the payment of debts and other claims against the estate. In the other he is the representative of the beneficiaries named in the statute, and the recovery, if any, is for damages resulting to them, and the amount recovered will be distributed among them." See, also, *Grainger v. Ry. Co.,* 101 S. C., 399, 85 S. E., 968.

It is patent that the Judge of Probate had no power to authorize the settlement made between Ethel Huggins and the defendants. The order permitting and authorizing such settlement could not give vitality to a matter over which that Court had no jurisdiction. Appellant contends vigorously that at the time of the settlement Ethel Huggins was the administratrix of the estate of Corbitt Huggins under the patent of the letters of administration from the Probate Court, and that what she did in and about the administration of the estate would be binding where the interests of third persons are concerned, who dealt with her in good faith, relying upon the validity of her appointment. In addition to the reasons above given, if the Probate Court had had power to authorize the settlement, it could not have given authenticity to the acts of Ethel Huggins because she and her children had no interest in the claim because she was not the wife of Corbitt Huggins, and her children by him were illegitimate. She and they could take nothing under the statute, and it cannot be held that she could compromise and dispose of the interests of the lawful wife and children of the decedent.

It seems a hardship that the defendants must pay again to the real beneficiaries of Corbitt Huggins the amount, and more, which they have paid to the spurious beneficiaries. But they are compelled to do so through no fault of the true beneficiaries. The case is not, in its result, unlike that of *Sov-*

*ereign Camp of Woodmen of the World v. Means,* 87 S. C., 127, 69 S. E., 85, 88. In that case the Woodmen of the World paid the proceeds of a certificate to the wrong person, to wit, Charles E. Fincher. The value of the certificate was $1,000-.00. Of this sum Mollie Fincher Means received $200.00. Thereafter she brought an action against the Woodmen and recovered judgment for the full amount of the certificate. On appeal, Mr. Justice Woods, delivering the opinion of the Court, said: "The facts appearing from the evidence as stated in the report of the referee and the decree of the circuit judge show beyond all doubt that the issues raised by the pleadings in this case were adjudicated against the plaintiff in another action entitled *'Mollie Fincher Means v. Sovereign Camp Woodmen of the World.'* We can add nothing to the reasoning of the circuit decree showing that there is no escape for the plaintiff from the plea of *res judicata.*

"The result is peculiarly regrettable in one particular. The Sovereign Camp of the Woodmen of the World, supposing Charles A. Fincher to be the real beneficiary of the certificate sued on, paid to him the amount which fell due on the death of George E. Fincher. Mollie Fincher Means admits that she received from Charles A. Fincher, of the identical money so paid to him, $200.00 just before she attained her majority, which she spent for clothing necessary for her marriage. Afterwards in the suit brought by her she was adjudged to be the beneficiary of the certificate and entitled to recover $1,000.00, the full amount of the certificate. Therefore, when Mollie Fincher Means collects the sum of $1,000.00 adjudged to be due her, she will have received $200.00 of the amount twice. It will be a hardship on the Sovereign Camp of the Woodmen of the World to have to pay again to her this sum of $200.00, and it will be a dishonest act on her part to receive it twice; but however strong the evidence now offered on this point may be, the adjudication in the former case prevents this court, as it did the circuit court, from granting any relief."

A still more apt case is that of *Sumter v. American Surety Co. et al.,* 174 S. C., 532, 178 S. E., 145. Demus Sumter was twice married: by the first wife, Ann, he had several children, among whom was Clarence Sumter; by his second wife, Della, he had other children. Clarence, son of the first wife, died while in service during the war, and left a policy of insurance payable to his father, Demus. The father collected the insurance and died leaving unexpended of the insurance money the sum of $1,024.70, which, under the Federal law, reverted to the estate of Clarence Sumter. His stepmother, Della, applied for administration of his estate, stating in her petition that she and her children were the sole heirs at law of Clarence. At her request, Mr. H. H. Stokes was appointed administrator of the estate and the American Surety Company became surety on his bond. He collected the money, paid the expenses of administration and distributed the remainder to Della and her children. Thereafter it developed that there were brothers and sisters of Clarence of the whole blood, who brought their action against Mr. Stokes and his surety. The last named pleaded, in bar of recovery, the settlement made by the duly appointed administrator, who had duly performed the duties of his office and been discharged.

The trial Court directed a verdict for the plaintiffs, the kindred of Clarence Sumter, of the whole blood, who under the statute of distribution of this State were entitled to inherit as against the kindred of the half blood.

Ethel Huggins and her children were not entitled to prosecute a claim under Lord Campbell's Act for injury to them caused by the death of Corbitt Huggins, and the order of the Probate Court could confer no such right on them; hence it is patent that the order of that Court was invalid to confer on them power to compromise that claim.

We think there is no merit in the assignment of error in the holding by the Circuit Judge that the appointment of A. R. Ellenberg as administrator of the estate of Corbitt Huggins was regular and valid. The con-

tention of the appellant is that, when the letters of administration issued Ethel Huggins were revoked, it was necessary to the validity of the appointment of another administrator that a new publication of citation to kindred and creditors be made; that Ellenberg was not related to Corbitt Huggins nor a creditor of his estate. It appears from the record that Ellenberg was appointed at the request of Emma Huggins, the legal wife of the decedent, who under the statute is first entitled to be appointed administrator. It further appears that no one sought the appointment, nor did any one object to the appointment of Ellenberg.

"When a petition for letters of administration is filed, and the probate judge issues a citation, under section 2516 of the Civil Code, to show cause why letters of administration should not be granted to the petitioner, if, upon the hearing, he decides against the right of the petitioner, he may grant the administration to another without a second citation. The purpose of the notice is to give all interested an opportunity to be heard before granting the letters, and this purpose is sufficiently accomplished by one citation." *Ex Parte Small*, 69 S. C. [43], 46, 47, 48 S. E., 40, 41. See, also, *In re* Estate of Jesse Jones, 102 S. C., 110, 86 S. E., 203; *Ex Parte White*, 38 S. C., 41, 16 S. E., 286.

In the present case, Emma Huggins, the wife who was first entitled to administration, was present in Court and asked for the appointment of A. R. Ellenberg.

We do not concur with appellant that there is a jurisdictional defect, apparent upon the face of the record, which rendered the appointment of Ellenberg null and void. That being the case, his appointment could be attacked only in a direct proceeding in the same Court. This proposition is too well established to need the citation of authorities.

In the case of *Southern Ry. Co. v. Moore*, 158 S. C., 446, 155 S. E., 740, 741, 73 A. L. R., 582, it appears that one Wagnon, a resident of Augusta, Ga., was killed in an

accident on the plaintiff's railroad at Branchville, S. C. He left a will with his wife as executrix thereof. She qualified in the Court of Ordinary for Richmond County, Ga. At her request and solicitation, R. R. Moore, a resident of South Carolina, was appointed administrator of the estate of Wagnon by the Probate Court of Orangeburg County, and brought action for the recovery of damages for the alleged wrongful death of Wagnon; the action being for the benefit of Wagnon's wife and children. The railway company petitioned the Probate Court of Orangeburg County to revoke the letters of administration to Moore, who was not kin to Wagnon nor a creditor of his estate. The Probate Court refused the petition. The Circuit Court affirmed this judgment, and this Court on appeal affirmed it. In the present case the defendants have no interest in the administration of the estate of Corbitt Huggins, except to defeat the action brought by A. R. Ellenberg as administrator.

We quote from *Southern Ry. v. Moore, supra:*

"As stated in the *Mayo Case,* above, [60 S. C., 401, 38 S. E., 634, 54 L. R. A., 660], the railroad company being merely a contingent debtor would have no right in any event to question the validity of the proceedings except as to a jurisdictional defect appearing on the face thereof. * * * All the railroad is interested in is whether the payment of a judgment to Moore as administrator, if one is obtained, would forever bar any other recovery in the same action. This court holds that such payment would bar any future recovery for the same cause of action, and upon the railroad company paying the money to Moore for the purpose of distribution under the statute its rights would be fully protected.

"There is still another reason why the administration in South Carolina should be upheld. It was taken admittedly, not only with the knowledge and consent of the executrix, but at her direction and suggestion. The suit is being brought for her benefit among others."

So in the present case, when the defendants pay the judg-

ment given against them, they will be immune against further recovery on that cause of action.

The exception (3) which charges error for admitting in evidence the Georgia Motor Vehicle Law (Acts Ga., 1931, p. 20, § 7), which requires motor vehicle carriers to give surety to indemnify the public for damages caused them on account of the negligence of such carrier, cannot be sustained. The error, if error there was, was harmless. The case was tried under the South Carolina law, which carries a similar requirement of such carriers.

Exception 4 charges error for that Goldy Huggins was permitted to testify over objection that on the morning of the day the settlement was made in the Probate Court he told Mr. Armstrong, the agent of the insurance company who wrote the policy, that "he was settling with the wrong people, and that that wasn't his wife, his wife was in North Carolina."

It appears from the record that this testimony was not given in the presence of the jury, and, while it was permitted to stay in the record, there is nothing to show that it was ever brought to the attention of the jury. This is not ground for reversal.

The allegation of error in Exception 5 is that Faircloth, a witness for plaintiff who testified that Clint Palmer, the driver of the car in which Corbitt Huggins was riding at the time of the accident, had told the witness that "he was trying to get to Bath ahead of the cloud," and that witness was allowed to add to this statement, "naturally he had to be driving fast." The objection relates to the last statement as being the expression of the opinion of the witness.

This witness on direct examination had just testified: "I heard him say he was trying to get ahead of the cloud, and beat the cloud to Bath, and it seems to me the cloud had overtaken him out of Augusta. *He said he was driving fast to get in there ahead of the cloud.*" (Italics added.)

This testimony was not objected to. The exception is overruled.

The judgment appealed from is affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER, BAKER and FISHBURNE concur.