415 P.2d 877

In the Matter of the ESTATE of Willard J. MILLIMAN, Deceased.

No. 8142–PR.

Supreme Court of Arizona, In Banc.

June 22, 1966.

Chandler, Tullar, Udall & Richmond, D. B. Udall, Tucson, for Farmers Ins. Group, appellant.

Rees, Estes & Browning, Neil J. Ward, Donald Estes, Tucson, for appellee Neil

J. Ward, administrator de bonis non of Estate of Willard J. Milliman, deceased.

McFARLAND, Justice.

This petition for review was accepted to review a decision of the Court of Appeals, Div. No. 2, 2 Ariz.App. 155, 406 P.2d 873, modified on rehearing, 2 Ariz.App. 338, 409 P.2d 54, which affirmed an order by the Superior Court of Pima County voiding all acts of an administratrix insofar as such acts affected the rights of certain survivors of the decedent, including an order authorizing the compromise and settlement of a claim for wrongful death.

The events leading up to this appeal are stated as follows: Willard J. Milliman, hereinafter referred to as Milliman, on July 15, 1950, married one Clarabelle Jean Woodcock, hereinafter referred to as Clarabelle, in the State of New York. Willard John, Henry Roger, Beverly Ann, John Lewis, Michael Andrew, and Susan Jane were children all born of this marriage. On April 12, 1956, Milliman left his wife, Clarabelle, and six children at home in New York and departed for work. He never returned. Milliman arrived in Willcox, Arizona, in the summer of 1956. While in Willcox, he married Maxine Roberts, whom he subsequently divorced. No children were born of this marriage. Thereafter, Milliman married Lucy Mae Horn, hereinafter referred to as Lucy, in Lordsburg, New Mexico, on February 6, 1960. Lucy, at the time of her marriage to Milliman, was the mother of an illegitimate child, one Hollis C. Rodriguez. In the course of her marriage to Milliman, she gave birth to Wayne Alexander Milliman. Another child was born of this marriage, but died shortly after its birth. The record on appeal shows that Milliman obtained only one divorce, that being the one from Maxine. On March 2, 1961, Milliman was killed in an automobile accident, which occurred in the State of Arizona.

Lucy filed a petition for letters of administration on May 2, 1961, alleging:

"That the names, ages and residences of the heirs of the decedent, so far as known to the petitioner, are as follows, to-wit:

"LUCY M. MILLIMAN, legal age, 220 W. Prince Road, Tucson, Arizona, wife;

HOLLIS GORDON MILLIMAN, 2 years, 220 W. Prince Road, Tucson, Arizona, son;

WAYNE ALEXANDER MILLIMAN, 8 months, 220 W. Prince Road, Tucson, Arizona, son;

JOHN MILLIMAN, legal age, Fredonia, N. Y., father;

GERTRUDE MILLIMAN, legal age, Fredonia, N. Y., mother."

Notice was given only to the persons mentioned above. Lucy was appointed administratrix on May 15, 1961. On that same date, she petitioned the court in her individual capacity and as administratrix for authorization to compromise and settle for $50,-000.00, the wrongful-death claim arising out of the auto crash. The petition was approved, and, in compliance with the court's order, the Farmers Insurance Company, hereinafter referred to as Farmers, paid Lucy the money. Lucy received individually $33,333.33, while Hollis Gordon Milliman (evidently the Rodriguez child) and Wayne Alexander Milliman received $8,-333.33 and $8,333.34, respectively, which funds were placed in court-controlled accounts in the Catalina Savings and Loan Association in Tucson. Lucy was appointed as guardian of these estates. On July 27, 1961, Lucy filed the final account, and petitioned for a final discharge as administratrix. Discharge was granted by the court commissioner on August 24, 1961.

On April 25, 1962, Neil J. Ward, hereinafter referred to as Ward, on behalf of Clarabelle and her six children, filed a petition to revoke the letters of administration issued to Lucy, alleging that at the time Lucy filed her petition to be adminis-

tratrix she was not Milliman's legal widow; that Lucy knew of the existence of Clarabelle and the six children; and that Lucy gave no notice to these heirs even though she knew of their existence. On December 13, 1962, a hearing was held on this matter before Pima County Court Commissioner Marks, and a record was made. Clarabelle testified, in part, as follows:

"Q Now Mrs. Childs [Clarabelle remarried subsequent to Milliman's death], during the period that Mr. Milliman was gone, did you ever institute any divorce proceedings in New York State or anywhere seeking a divorce against Willard Milliman?

"A No.

"Q During that time that he was gone from April 12th, 1956, up until the date of his death, were you served with any papers in a divorce action wherein Willard Milliman was the plaintiff and you were the defendant?

"A None at all.

"Q None at all?

"THE COMMISSIONER: I might ask one more question on that.

Although not served with any papers during the period from April 12, 1956, until his death, did you through any other person or directly ever learn that he may have instituted or obtained a divorce against you in the courts of any state, in courts other than New York, or for that matter in the New York courts?

"THE WITNESS: No."

The record shows that no papers or notice of any proceedings for divorce had ever been served upon Clarabelle either before or after Milliman left New York. In October of 1957 he married Maxine Roberts of Willcox. That marriage was terminated by divorce in Pima County shortly before the marriage of Milliman to Lucy. Margaret Bonnin, Lucy's mother, testified that the decedent had said some two years before her daughter's marriage

to him that he was divorced from Clarabelle in New York, and that he had one child that was up for adoption, and that his folks would not have anything to do with him because they were Catholic.

Clarabelle stated that she knew of Milliman's death very shortly after it occurred, and that she had not filed any action with regard to the estate until the following year because she "didn't think there was anything there." Lucy's mother testified that Milliman's relatives who attended the funeral informed her that Milliman was still married to Clarabelle as they knew of no divorce, and that there were six children of that marriage. She stated that Lucy was told this information the day of Milliman's funeral. She further stated that Lucy had mentioned to Farmers' representative that Milliman and Clarabelle had a child. In an order dated December 13, 1962, the court revoked Lucy's letters of administration and Ward was appointed administrator de bonis non.

On May 22, 1963, a hearing was held on Ward's petition to have the court set aside its order approving the compromise and settlement of the wrongful-death claim. Lucy testified that Milliman had told her of his marriage to Clarabelle and that he had one child as a result thereof, which child she believed was subsequently adopted. Lucy stated that she informed the representative of Farmers of this prior marriage and child. She stated that Milliman had told her that he was divorced from Clarabelle. Margaret Bonnin testified that she was present when Lucy, prior to the settlement, told Farmers' representative of the prior marriage, divorce, and of the child in New York. Tom Mabry, the representative of Farmers who had handled Lucy's claim, testified that he had never been informed by Lucy or her mother of the existence of the prior marriage and child, and that his records did not disclose any such information. Mr. Udall, the attorney for the insurance company, who had prepared the paperwork for Lucy in settling the claim, made an avowal to the court: "I have absolutely no recollection of anyone telling

me about the wife or adopted child at any time until I was first contacted by Mr. Ward."

Farmers contends the trial court erred when it set aside its earlier order authorizing settlement of the wrongful-death claim. Farmers alleges that the trial court had jurisdiction to enter the order, and that in the absence of fraud on the part of Farmers (legal counsel for Farmers had prepared all the paperwork for Lucy), the order should stand. Farmers further alleged that the failure of Clarabelle to file a motion to set aside the order within six months after the order was entered precluded the court from entering its order to set aside its earlier order.[1] Rule 60(c) does not afford the only grounds for setting aside a judgment.

■ A court which makes a void order may at any time on its own motion or the motion of party move to set aside such void order. "The void judgment creates no binding obligation upon the parties, or their privies; it is legally ineffective." 7 Moore's Federal Practice § 60.25[2] (2d ch. 1955), p. 263, footnote #29. This rule of law is succinctly stated in Moore's Federal Practice, supra:

"The theory underlying the concept of a void judgment is that it is legally ineffective—a legal nullity; and may be vacated by the court which rendered it at any time. Laches of a party can not cure a judgment that is so defective as to be void; laches cannot infuse the judgment with life." 7 Moore's Federal Practice § 60.25[4] (2d ed. 1955), p. 274.

If Milliman was not divorced from Clarabelle, then the marriage between Milliman and Lucy was void ab initio, and the orders of the court which allowed Lucy to settle the wrongful-death claim as the surviving spouse were also void. The law is well settled that a marriage between persons, one of whom is married to another, is void. 35 Am.Jur., Marriage § 148; and the second marriage is "good for no legal purpose." 35 Am.Jur., Marriage § 148.

The facts of this case show there was a valid marriage between Clarabelle and Milliman, and the issue of this marriage was six children; that Milliman had never divorced Clarabelle before marriage to Lucy; that he left New York on April 12, 1956, arriving in Arizona during the summer of that year; that in October 1957 he married Maxine Roberts, which marriage was dissolved by divorce; and that he thereafter married Lucy in Lordsburg, New Mexico, on February 6, 1960. Farmers contends there was a presumption that the second marriage was valid, and that this overcame any presumption of the continuance of the first marriage. Farmers also contends that the evidence to rebut the

1. Rule 60(c), A.R.C.P., amended laws 1960, 16 A.R.S.:

"60(c) Mistake; inadvertence; surprise; excusable neglect; newly discovered evidence; fraud, etc. On motion and upon such terms as are just the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(d); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged, or a prior judgment on which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than six months after the judgment, order or proceeding was entered or taken. A motion under this subdivision does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to grant relief to a defendant served by publication as provided by Rule 59(j) or to set aside a judgment for fraud upon the court. The procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

presumption of the second marriage must be clear and conclusive as to fairly preclude any other result, and cites Kolombatovich v. Magma Copper Co., 43 Ariz. 314, 30 P.2d 832. In discussing the decision in this case in Roy v. Industrial Commission, 97 Ariz. 98, 397 P.2d 211, we said:

"It was pointed out in the Kolombatovich decision, supra, that the evidence to rebut the validity of the marriage must be sufficiently clear and conclusive as fairly to preclude any other result. A more recent decision recognizes the presumption as being very powerful but rejected the argument that the evidence in opposition thereto must be conclusive to overcome it. Hodges v. Industrial Commission, 73 Ariz. 326, 241 P.2d 431. See also Texas Employers' Insurance Association v. Elder, 155 Tex. 27, 282 S.W.2d 371." 97 Ariz. at 100, 397 P.2d at 213.

In Cross v. Cross, 94 Ariz. 28, 381 P.2d 573, we reviewed the decisions in regard to presumption, including Kolombatovich, supra, after which we stated:

"An examination of those decisions reveals that the presumption therein announced is not conclusive, nor does it place a burden upon the party attacking a marriage to prove beyond any possible doubt that the marriage was invalid. Here, *all* the proof strongly tends to rebut the presumption of a valid marriage. The evidence concerning Ruel Herbert Wheeler was that he was alive at the time of the purported divorce and subsequent marriage the same day. All the evidence shows that the parties relied on and intended the Mexican divorce to dissolve appellee's marriage to Wheeler so as to enable her to marry appellant. On these facts the presumption of validity is overcome. Any other result would be patent absurdity." 94 Ariz. at 31, 381 P.2d at 575.

In Hodges v. Industrial Commission, 73 Ariz. 326, 241 P.2d 431, we stated:

"Petitioner contends that the presumption of validity of a marriage is strong enough to overcome any impediment not *con-*

*clusively* proven, in this instance the lack of a divorce dissolving the prior marriage of petitioner. Petitioner's contention has great merit as the presumption is admittedly very powerful but we do not believe it is as far reaching as petitioner contends. Respondent commission as the trier of fact found on conflicting evidence that a divorce had not been obtained. As there is sufficient evidence to support the finding this court is bound by it." 73 Ariz. at 328, 241 P.2d at 432.

The record in the instant case shows there was sufficient evidence wherein the lower court could make a finding that there never was a divorce between Clarabelle and Milliman. We have often stated that this court will sustain a judgment on appeal if it can be sustained upon any theory which is within the issues and supported by the evidence. Phelps Dodge Corp., Morenci Br. v. Industrial Commission, 90 Ariz. 379, 368 P.2d 450; Mountain States Construction Company v. Riley, 88 Ariz. 335, 356 P.2d 648; Odom v. First National Bank of Arizona, 85 Ariz. 238, 336 P.2d 141. In order to make a ruling that all the acts of Lucy as administratrix were "null and void," insofar as they affected the rights of Clarabelle and the six children, the trial court would have had to find that in fact the marriage between Lucy and Milliman was void. We hold there was sufficient evidence to support such a finding of the court that the marriage between Milliman and Lucy was void.

A determination of the effect of the proceedings on the rights of the parties in the instant case requires an examination and interpretation of the wrongful-death statute. There are two distinct proceedings under wrongful-death statutes. One is a claim for damages to the survivors; the other is for damages to the estate.

The courts, including our own, have generally held that this depends upon the wording of the particular wrongful-death statute. Our wrongful-death statute first appeared in 1887 in which it was provided the action was to be for the sole and ex-

clusive benefit of the surviving husband, wife, children, or parents.[2] In 1901 it was substantially changed to provide every such action to be brought in the name of the personal representative.[3] The law remained the same until 1956, when it was amended to provide the action shall be brought in the name of the surviving husband, wife, or personal representative of the deceased person.[4]

We agree with the conclusions of the appellate court in In Re Milliman, supra, in its original opinion, in an excellent analysis of the effects of the respective amendments to the wrongful-death statute.

2. "§ 2149. The action shall be for the sole and *exclusive benefit* of the surviving husband, wife, children and parents of the person whose death shall have been so caused, and the amount recovered therein shall not be liable for the debts' of the deceased. [Emphasis added.]
"§ 2150. The action may be brought by all the parties entitled thereto, or by any one or more of them for the benefit of all."
"§ 2151. If the parties entitled to the benefit of the action shall fail to commence the same within six months after the death of the deceased, it shall be the duty of the executor or administrator of the deceased to commence and prosecute the action, unless requested by all of the parties entitled thereto not to prosecute the same.
       *       *       *       *       *
"§ 2155. The jury may give such damages as they may think proportioned to the injury resulting from such death; and the amount so recovered shall be divided among the persons entitled to the benefit of the action, or such of them as shall then be alive, in such shares as the jury shall find by their verdict."

3. "§ 2765. Every such action shall be brought by and in the name of the personal representative of such deceased person; and, *provided*, that the father, or in the case of his death or desertion of his family, the mother, may maintain the action for the death of a child, and the guardian for the death of his ward; and the amount recovered in every such action shall be distributed to the parties and in the proportions provided by law in relation to the distribution of personal estate left by persons dying intestate.
"§ 2766. In every such case the jury shall give such damages as they shall deem fair and just, not exceeding five thousand

We enacted our wrongful-death statute for the first time in 1887. § 2145 et seq., Revised Statutes of Arizona, 1887. This provision was strikingly similar to the original Lord Campbell's Act of England. Southern Pacific Co. v. Wilson, 10 Ariz. 162, 85 P. 401. This statute created a new cause of action for the benefit of the beneficiaries named in the statute, but recovery under such statute is not an asset of the deceased's estate. Annot. 14 A.L.R. 516 (1921).

This statute was amended in 1901 to provide that the cause of action was one for the benefit of the estate, rather than for the

dollars, and the amount so recovered shall not be subject to any debts or liabilities of the deceased: *Provided*, That every such action shall be commenced within one year after the death of such deceased person. If the defendant in any such action die pending the suit, his executor or administrator may be made a party and the suit be prosecuted to judgment as though such defendant had continued alive. The judgment in such case, if rendered in favor of the plaintiff, shall be paid in due course of administration."

4. "§ 12–612. Parties plaintiff; recovery; distribution
"A. An action for wrongful death shall be brought by and in the name of the surviving husband or wife or personal representative of the deceased person for and on behalf of the surviving husband or wife, children or parents, or if none of these survive, on behalf of the decedent's estate.
"B. The father, or in the case of his death or desertion of his family, the mother, may maintain the action for death of a child, and the guardian for death of his ward.
"C. The amount recovered in an action for wrongful death shall be distributed to the parties provided for in subsection A and in the proportions provided by law for distribution of personal estate left by persons dying intestate.
"D. The term 'personal representative' as used in this section shall include any person to whom letters testamentary or of administration are granted by competent authority under the laws of this or any other state. The action for wrongful death may be maintained by any such personal representative without issuance of further letters, or other requirement or authorization of law. As amended Laws 1956, Ch. 46, § 1."

benefit of the named beneficiaries. Southern Pacific Co. v. Wilson, supra.

█ In A.R.S. § 12–612, adopted in 1956, we have re-enacted the substance of the provisions making the action for the benefit of the surviving husband, wife, children, and parents, as found in the 1887 statute. The claim is not an asset of the deceased's estate. A.R.S. § 12–612, subsec. A, reads as follows:

"A. An action for wrongful death shall be brought by and in the name of the surviving husband or wife or personal representative of the deceased person *for and on behalf of the surviving husband or wife, children or parents,* or if none of these survive, on behalf of the decedent's estate." [Emphasis added.]

Under the 1956 statute the claim is for damages to the named survivors rather than damages to the estate. A.R.S. § 12–613 provides, in part:

"In an action for wrongful death, the jury shall give such damages as it deems fair and just with reference to the injury resulting from the death *to the surviving parties who may be entitled to recover,* and also having regard to the mitigating or aggravating circumstances attending the wrongful act, neglect or default. * * *" [Emphasis added.]

█ It is therefore the conclusion of this court that a wrongful-death claim of a surviving widow and children is not a claim " * * * by * * * the estate" under the provisions of A.R.S. § 14–474.

Dockery v. Central Arizona L. & P. Co., 45 Ariz. 434, 45 P.2d 656, and Estate of Hannerkam, 51 Ariz. 447, 77 P.2d 814, cited by Farmers, wherein it was held that wrongful-death action is one pertaining to the estate of deceased, were decided under the statute as it existed prior to 1956. Thus they are not applicable to the instant case.

The amendment of 1956 makes plain the action is only for the benefit of decedent's estate when there are no "surviving husband or wife, children or parents." The question then is in regard to the jurisdiction of a probate court where there are survivors, and the authority of the personal representative to compromise a claim.

It will be noted that under paragraph D of § 12–612, A.R.S., it is provided:

"D. The term 'personal representative' as used in this section shall include any person to whom letters testamentary or of administration are granted by competent authority under the laws of this or any other state. The action for wrongful death may be maintained by any such personal representative without issuance of further letters, or other requirement or authorization of law. As amended Laws 1956, Ch. 46, § 1."

Other states having similar statutes hold the administrator or executor acts in this capacity as a statutory trustee. In the case of Dominguez v. Galindo, 122 Cal.App. 2d 76, 264 P.2d 213, brought under the wrongful-death statute in California, the court said:

" * * * That section has since 1872 provided that when the death of a person is caused by the wrongful act or neglect of another 'his heirs *or personal representatives* may maintain an action for damages against the person causing the death'. (Italics added.) But the bringing of such an action is not a matter having to do with the probate of a decedent's estate and it has always been the law in this state that the action 'authorized by section 377 of the Code of Civil Procedure is one solely for the benefit of the heirs, by which they may be compensated for the pecuniary injury suffered by them by reason of the loss of their relative, that the money recovered in such an action does not belong to the estate but to the heirs only, and that an administrator has the right to bring the action only because the statute authorized him to do so, and that he is simply made a statutory trustee to recover damages for the benefit of the heirs.' Ruiz v. Santa Barbara Gas, etc., Co., 164 Cal. 188, 191–192, 128 P. 330, 332. Since the statute authorizing the

action declares that the suit may be brought by the personal representative and makes no distinction as to whether that representative be special or general, and since the action brought is not in any sense business of the estate, we see no reason to hold that the limitations upon the powers of a special administrator as set forth in the Probate Code, and as the same were set forth in the Code of Civil Procedure before the adoption of the Probate Code, should be considered as any basis for drawing a distinction between special and general administrators which the authorizing section does not itself draw. As said in the quotation from Ruiz v. Santa Barbara Gas, etc., Co., supra, the personal representative, and of course both general and special administrators are personal representatives, is simply made a statutory trustee to recover damages for the benefit of the heirs." 264 P.2d at 216.

In the case of Bright's Estate v. Western Air Lines, 104 Cal.App.2d 827, 232 P.2d 523, the plaintiff brought suit for damages resulting from wrongful death, and the court held:

"Section 377 of the Code of Civil Procedure provides for an action by the heirs and representatives of one killed by the wrongful act or neglect of another for damages against the person causing the death, and it has been held that an action for death is entirely statutory; that an administrator has power to bring such an action only as the statutory trustee for the benefit of the heirs of the deceased and for no other purpose; that this statute was enacted in order that the heirs might compensate themselves for pecuniary injuries suffered in the loss by death of a relative; that if the deceased had no heirs, then the stat-

ute did not apply and there could be no action for there could be no statutory trustee if there were no trust nor beneficiary. Webster v. Norwegian Mining Co., 137 Cal. 399, 400, 70 P. 276. In Estate of Riccomi's Estate, 185 Cal. 458, 460, 197 P. 97, 98, 14 A.L.R. 509, it is said:

"'It is settled that the action authorized by the section is one solely for the benefit of the heirs by which they *may be compensated for the pecuniary loss suffered by them* by reason of the loss of their relatives. The money recovered constitutes no part of the estate of deceased, and where the action is brought or the money recovered by the personal representative of the deceased, such personal representative is acting solely as a statutory trustee for the benefit of the heirs on account of whom the recovery is had.'" 232 P.2d at 525.

The case of Anderson v. Clough, 191 Or. 292, 230 P.2d 204, was an action for damages under the Oregon wrongful-death statutes.[5] As the first affirmative answer and defense, defendants alleged that by virtue of an order made and entered in the Circuit Court of Marion County, Oregon, an administrator had made a claim for damages in behalf of the estate of decedent which was compromised and settled. The administrator received the money from defendants and executed a release on behalf of the estate in full settlement of all claims which said estate and the administrator thereof might have had against defendants. The petition for appointment of administrator, among other things, alleged that the decedent "* * * departed this life in Salem, Marion County, Oregon, * * *" and that at the time of his death was an inhabitant of the State of Oregon.

5. Sec. 8–903, O.C.L.A., provides: "When the death of a person is caused by the wrongful act or omission of another, the personal representatives of the former *for the benefit of the widow or widower and dependents and in case there is no widow or widower, or surviving dependents, then for the benefit of the estate of the deceased may* maintain an action at law therefor against the latter, if the former might have maintained an action, had he lived, against the latter, for an injury done by the same act or omission. * * *" [Emphasis added.]

The court, after holding the proceedings in the probate court were void, said:

"In this case there was but one cause of action, and that in favor of the widow and children. No cause of action ever vested in the estate. It accrued to and was vested in the named beneficiaries immediately upon the death of decedent. The right to maintain the action is given the personal representative of decedent for the benefit of the dependents, but the cause of action belongs to the beneficiaries. Ross v. Robinson, 169 Or. 293, 316, 124 P.2d 918, 128 P.2d 956; Chicago, Burlington, & Quincy Railroad Co. v. Wells-Dickey Trust Co., Adm'r, 275 U.S. 161, 48 S.Ct. 73, 72 L.Ed. 216, 59 A.L.R. 758.

"We need not decide here whether an administrator, in the absence of statutory authority, may settle a claim for damages growing out of the wrongful death of his intestate, without the consent of the beneficiaries, because in the Marion county proceedings the administrator did not assume to settle anything other than a claim alleged to have belonged to the estate. He in no way assumed to act on behalf of the widow and children of the decedent. Manifestly, a settlement made for and on behalf of an estate could not be deemed a settlement of a cause of action accruing for the benefit of named beneficiaries. In no event could the purported settlement made under the Marion county proceedings bar the present action for and on behalf of the widow and minor children who, under the statute, are the beneficiaries. Ellenberg, Adm'r v. Arthur, 178 S.C. 490, 183 S.E. 306, 103 A.L.R. 437.

"We note in passing that by virtue of the provisions of ch. 461, Oregon Laws, 1947, an administrator is now permitted to settle a claim for damages growing out of the wrongful death of his intestate without the consent of the beneficiaries, provided such settlement is approved by the probate court; but this statute was adopted after the proceedings in the instant case were had, and therefore, it is not applicable here.

"Any other ruling would open the doors to widespread fraud, because if the law were otherwise, through ex parte proceedings instituted by creditors or others in which the existence of dependents is not brought to the court's attention, quick settlements could be made wholly without regard to the interests of those for whose benefit the statute is designed and thus deprive the real parties in interest of their just rights. This would be unconscionable." 230 P.2d at 210.

■ It seems plain that A.R.S. § 12–612 permits a wrongful-death action to be brought by either the surviving husband or wife, or by the personal representative. This permits the surviving husband or wife to compromise the action without even bringing suit, but they would be acting as a statutory trustee for the other beneficiaries, if any, in which event they would have to get the consent of any other surviving relatives. If there were minors, a guardian would have to be appointed, and the court would have to approve the compromise. The compromise would be valid only if made with the proper parties. They could, of course, if appointed by the court as administrator or executor of the estate, get permission of the probate court to make the compromise; or if a third person were appointed administrator or executor and therefore qualified as personal representative he could bring the suit or make the compromise but he too would be acting as statutory trustee for the survivors, if any.

Since the proceedings are in personam, and not in rem as in a probate proceeding, the only way defendant could protect himself in such a compromise proceeding would be to require that the compromise be made on behalf of, and the money paid to, those found by the court to be heirs entitled thereto under the same proceedings as provided in the distribution of an estate. Otherwise, as stated in Anderson v. Clough, supra, the doors would be open to widespread fraud because through ex parte proceedings in-

stituted by creditors quick settlements could be made wholly without regard to the interests of those whom the statute is designed to benefit, and the real parties in interest would be deprived of their rights.

In the instant case, the petition for settlement made by Lucy alleged:

"2. Your petitioner, individually and as Administratrix of the Estate of Willard J. Milliman, deceased, has a claim for wrongful death against RALPH W. KENNEDY dba RALPH'S TRUCK SERVICE, FLOYD E. TUCKER, and ALLENDER & LACHEMMYER arising out of an accident or incident which occurred on or about March 2, 1961, approximately 34 miles West of the City of Gila Bend, County of Maricopa, State of Arizona.

"3. An insurance company has offered to your petitioner, individually and as Administratrix of the Estate of Willard J. Milliman, deceased, the sum of FIFTY THOUSAND and No/100 ($50,000.00) DOLLARS in compromise of the said claim. Your petitioner is informed and believes and therefore alleges that the said offer is a fair and just offer, and that the best interests of the said estate requires that your petitioner, individually and as Administratrix of the estate of Willard J. Milliman, Deceased, be authorized to accept the said sum in full and complete settlement of the said claim."

The offer of compromise was conditioned upon the execution by the petitioner individually and as administratrix of a full and complete release. She also alleged that she had been appointed guardian of the persons and estates of Hollis Gordon Milliman and Wayne Alexander Milliman, minors, and asked for permission to execute individually and as administratrix of the estate a full and complete release; also that she be permitted to pay herself as guardian of the minors the sum of $16,666.-67 and to herself $33,333.33. It was under this petition that the compromise of settlement was made, and the order for dis-

tribution was signed by the court on the same day it was filed. Payment was thereafter made in accordance with the petition. Lucy was therefore acting in her individual capacity, and purporting to act as statutory trustee of the two minor heirs named in the petition.

■ Lucy admitted that when she filed her petition for letters of administration and to compromise the claim she had knowledge of the previous marriage, and that there had been no divorce, also that she had knowledge of the six children of the prior marriage. The attorneys for the insurance company, who prepared all of the papers, acted in good faith, and had the facts been as represented to them by their client the compromise would have been valid. But the client negotiated with a person who did not have a right to make a settlement, as she was not the surviving wife, and therefore it acted at its peril. Anderson v. Clough, supra. A compromise and settlement made on petition of a person in her individual capacity and as Administratrix who fraudulently represented herself to be a widow, and fraudulently concealed from the court a legal survivor, which was acted upon by the court on the same day it was filed, and without notice to the legal widow and other surviving children, is not res judicata as to such legal widow and surviving children.

■ Farmers contends that the remedy would be an action against Lucy for fraud. This would not be a remedy in the instant case, as Lucy has admittedly squandered the money paid to her, and she having filed a petition in her individual capacity was only required by the court to give a one-dollar bond. Where a party has been prevented from learning of the proceedings, or asserting a timely claim, it has been held to be extrinsic fraud. Honk v. Karlsson, 80 Ariz. 30, 292 P.2d 455. Under this general rule of law, the court in the instant case had the authority to set aside the judgment. However, Clarabelle and her children are not limited to an equitable action against the defrauding party to impress a

constructive trust, for the reason that Lucy was acting in her individual capacity, and made the settlement as the surviving wife of decedent. Lucy not having been the legal wife of the decedent, and the court having so found, her actions in that capacity were void and there was no legal settlement. Honk v. Karlsson, supra.

Farmers contends that it was an innocent party and for this reason should be protected. While there is no contention made that Farmers was guilty of fraud, both Lucy and her mother testified they had informed the claims adjuster, Tom Mabry, there was "another child." While Mabry testified that he did not recall being told of another heir, the court could have found he was so informed. The fact that Mabry did not know the importance of informing the attorneys for Farmers, who drew all the papers, or was negligent in failing to inform them, does not relieve the company of its responsibility. Had he so informed the attorneys this whole fraud perpetrated upon the parties could have been avoided. Notice to the agent is notice to the principal. The insurance company knew that it was dealing with Lucy in her individual capacity, as its attorneys had prepared all the papers which Lucy had signed and presented to the court, and in fact prepared the papers for all the proceedings. Undoubtedly this was done to save Lucy money, but in so doing the company assumed a greater responsibility in the case, and regardless of whether Farmers had knowledge of another heir it dealt with Lucy in her individual capacity, and did not protect itself in the proceedings, and paid the money over to Lucy individually as the surviving wife of the decedent. Hughes v. Riggs Bank, 29 Ariz. 44, 239 P. 297.

Where one of two innocent parties must suffer, the loss must be borne by the one whose act caused the loss. Dissing v. Jones, 85 Ariz. 139, 333 P.2d 725. Farmers contends the trial court should have ordered the monies now on deposit under the guardianship for the minors returned

to the court. There is evidence in the case that Milliman is not the father of one of the minors, and this minor is not entitled to any of the money paid. There has been no determination made as to surviving children. This can only be done after proper notice.

The decision of the Court of Appeals is vacated. Judgment affirmed.

STRUCKMEYER, C. J., BERNSTEIN, V. C. J., and UDALL and LOCKWOOD, JJ., concur.